*158 WEAVER, J.
The issue presented is whether our Double Jeopardy Clause[1] prohibits the state of Michigan from prosecuting defendant for the theft of an automobile from Michigan after defendant pleaded guilty in Kentucky, where he was apprehended, to a charge of attempted theft of the automobile by unlawful taking. We overrule People v Cooper[2] and hold that our Double Jeopardy Clause does not bar defendant’s successive state prosecution in Michigan because the entities seeking to prosecute defendant in this case — Kentucky and Michigan — are separate sovereigns deriving their authority to punish from distinct sources of power. The decision of the Court of Appeals affirming the trial court’s order granting defendant’s motion to quash the information is reversed and the case is remanded to the trial court for proceedings consistent with this opinion.
FACTS
It is not disputed that defendant stole a 1999 Chevrolet Malibu, valued at $8,200, and drove the automobile from Michigan to Kentucky, where he was apprehended.
On August 22, 2001, defendant was charged in Kentucky with theft by unlawful taking or disposition of property valued at $300 or more.[3] On September 4, 2001, defendant pleaded guilty to an amended charge of attempted theft by unlawful taking or disposition of property valued at $300 or more.[4] He was sentenced to 365 days in jail, to be suspended during two years’ probation.
*159 On March 22, 2002, defendant was charged in Genesee County, Michigan, with unlawfully driving away a motor vehicle and with receiving and concealing stolen property.[5] Defendant moved to quash the information on the basis of double jeopardy, asserting that the double jeopardy provision of the Michigan Constitution[6] and the case People v Cooper prohibited a second prosecution in Michigan for the theft of the automobile, unless the interests of Michigan and Kentucky were substantially different. The trial court granted defendant’s motion on June 11, 2002, and dismissed the charges, concluding that the case was controlled by People v Cooper.
The prosecutor appealed, and the Court of Appeals affirmed in an unpublished opinion per curiam.[7] The Court of Appeals concluded that Cooper was still the controlling law because only three justices from this Court would have overruled Cooper in People v Mezy[8]
This Court granted the prosecutor’s application for leave to appeal.[9]
STANDARD OF REVIEW
Whether the information should have been quashed on the basis of double jeopardy is a question of law that this Court reviews de novo. People v Nutt, 469 Mich 565, 573; 677 NW2d 1 (2004). In interpreting a constitutional provision, the primary rule of constitutional interpretation has been described by Justice COOLEY:
*160 “A constitution is made for the people and by the people. The interpretation that should be given it is that which reasonable minds, the great mass of the people themselves, would give it. ‘For as the Constitution does not derive its force from the convention which framed, but from the people who ratified it, the intent to be arrived at is that of the people, and it is not to be supposed that they have looked for any dark or abstruse meaning in the words employed, but rather that they have accepted them in the sense most obvious to the common understanding, and ratified the instrument in the belief that that was the sense designed to be conveyed.’ ” [Traverse City School Dist v Attorney General, 384 Mich 390, 405; 185 NW2d 9 (1971) (quoting Cooley’s Const Lim 81) (added emphasis omitted).]
ANALYSIS
At issue in the present case is whether our Double Jeopardy Clause prohibits charging and trying defendant in Michigan for the theft of an automobile from Michigan after he pleaded guilty in Kentucky, where he was apprehended, to attempted theft of the automobile. Answering this question requires us to determine whether this Court correctly construed our Double Jeopardy Clause and correctly applied the doctrine of dual sovereignty in People v Cooper.[10]
Michigan’s Double Jeopardy Clause provides, “No person shall be subject for the same offense to be twice *161 put in jeopardy.” Const 1963, art 1, § 15. The federal provision is substantially similar, providing “nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb ....” US Const, Am V In Nutt, supra, we explained that the protections provided by the Double Jeopardy Clause include: (1) protection against a second prosecution for the same offense after acquittal, (2) protection against a second prosecution for the same offense after conviction, and (3) protection against multiple punishments for the same offense. Nutt, supra at 574.
In Nutt, we further concluded that
in adopting art 1, § 15, the people of this state intended that our double jeopardy provision would be construed consistently with Michigan precedent and the Fifth Amendment. [Id. at 591.]
This conclusion was based, in part, on an examination of the record of the constitutional convention in 1961. Id. at 588-590. In 1835, Michigan’s Constitution, art 1, § 12, contained language similar to that of the federal constitution: “No person, for the same offense, shall be twice put in jeopardy of punishment.” Nutt, supra at 588. In 1850 and 1908, the language of this provision was changed to “No person, after acquittal upon the merits, shall be tried for the same offense.” Const 1850, art 6, § 29; Const 1908, art 2, § 14; Nutt, supra at 588; 1 Official Record, Constitutional Convention 1961, p 465. At the 1961 constitutional convention, it was proposed that the provision be revised to once again mirror the language of the federal constitution. Nutt, supra at 589; 1 Official Record, Constitutional Convention 1961, p 465. In discussing the proposed amendment at the constitutional convention, it was noted by Delegate Stevens that even when the language differed from the federal provision in 1850 and 1908, this Court *162 had “ ‘virtually held that this means the same thing as the provision in the federal constitution 1 Official Record, Constitutional Convention 1961, p 539. This historical context supports Nutt’s conclusion that Michigan’s double jeopardy provision should be construed consistently with the Fifth Amendment.
In Bartkus v Illinois,[11] the defendant was tried in federal district court for the robbery of a federally insured savings and loan association and was acquitted. After his acquittal, a state grand jury indicted the defendant on robbery charges from the same robbery. The defendant was tried, convicted, and sentenced to life imprisonment. On appeal, the defendant asserted that his state conviction was barred by double jeopardy. The United States Supreme Court disagreed, concluding that successive state and federal prosecutions based on the same transaction or conduct were not barred by the Double Jeopardy Clause. 359 US at 122-124.[12] The Court reasoned:
It would be in derogation of our federal system to displace the reserved power of States over state offenses by reason of prosecution of minor federal offenses by federal authorities beyond the control of the States. [Id. at 137.]
*163 In People v Cooper, the defendant was acquitted in federal court of attempting to rob a bank. He was then tried in state court on charges stemming from the same criminal act. 398 Mich at 453. In addressing the defendant’s argument that his trial in state court was barred by double jeopardy, this Court acknowledged the holding in Bartkus that successive prosecutions were not barred by double jeopardy, but decided that a “trend in United States Supreme Court decisions” suggested “that the permissibility of Federal-state prosecutions as a requirement of our Federal system [was] open to reassessment.” Id. at 457. The Court opined that the trend it perceived required increased scrutiny of the dual sovereignty doctrine, and that double jeopardy may bar successive prosecutions. Id. at 459-460.[13] The Court explained:
The dual sovereignty notion is predicated on the belief that state criminal justice systems should be strong. Additionally, there is the fear that Federal legislation which covers a criminal act may involve interests unlike the interests which state legislation covering the same criminal act may seek to promote. We agree that where an individual’s behavior violated state and Federal laws which are framed to protect different social interests, prosecution by one sovereign will not satisfy the needs of the other *164 sovereign. In such a case, given the Federal government’s preemptive power, the inability of the state to vindicate its interests would truly be an “untoward deprivation of the historic right and obligation of the States to maintain peace and order within their confines. It would be in derogation of our federal system”. Bartkus, supra, at 137 (Frankfurter, J.). Therefore, we cannot accept defendant’s proffered alternative to the dual sovereignty doctrine which would prohibit all successive prosecutions by two sovereigns for the same act.
However, the interest of the Federal and state governments in prosecuting a criminal act frequently coincide. When state and Federal interests do coincide, prosecution by one sovereign will satisfy the need of the other. {Id. (emphasis in original).]
Thus, the Cooper Court held “that Const 1963, art 1, § 15 prohibits a second prosecution for an offense arising out of the same criminal act unless it appears from the record that the interests of the State of Michigan and the jurisdiction which initially prosecuted are substantially different.” Id. at 461.
Justice KELLY in dissent makes much of the Cooper Court’s statement that its decision rested on Michigan’s Constitution. Id. at 461. But simply stating this conclusion does not make it so. A close examination of Cooper reveals that it was not decided on the basis of different language in our Constitution or on the basis of a different history behind Michigan’s adoption of a double jeopardy bar. Indeed, no analysis was made at all regarding any of the text or history of art 1, § 15, and apart from the conclusory statement at the end of the Cooper opinion that the decision was based on Michigan’s double jeopardy provision, there is nothing in the opinion actually linking this statement to the actual language or history of Michigan’s double jeopardy provision. Rather, the case was decided as it was because the Cooper Court simply questioned Bartkus and mis *165 takenly perceived a “trend” in United States Supreme Court law.[14] Thus, although the Cooper Court was wrong in its understanding of federal law, it did look to federal law in construing Michigan’s double jeopardy provision, just as the majority does in this case.
Nine years after this Court’s decision in Cooper, the United States Supreme Court decided Heath v Alabama,[15] a case that demonstrates that the Cooper Court was incorrect about any “trend” narrowing the dual sovereignty doctrine or the ability of states to prosecute successively. In Heath, the petitioner hired two men to kill his wife. The petitioner met the men in Georgia, just over the border from his Alabama home, and led the men back to his home. The men kidnapped the petitioner’s wife from the home; her body was later found on the side of a road in Georgia. The petitioner pleaded guilty in Georgia to a murder charge in exchange for a sentence of life imprisonment. He was then indicted in Alabama for the capital offense of murder during a kidnapping, convicted, and sentenced to death. 474 US at 83-86. The petitioner asserted that the Alabama prosecution constituted double jeopardy. The United States Supreme Court granted certiorari limited to the double jeopardy issue and “requested the parties to address the question of the applicability of the dual sovereignty doctrine to successive prosecutions by two States.” Id. at 87.
The Heath Court determined that the dual sovereignty doctrine permitted successive prosecutions under the laws of different states. The Court explained:
*166 The dual sovereignty doctrine, as originally articulated and consistently applied by this Court, compels the conclusion that successive prosecutions by two States for the same conduct are not barred by the Double Jeopardy Clause.
The dual sovereignty doctrine is founded on the common-law conception of crime as an offense against the sovereignty of the government. When a defendant in a single act violates the “peace and dignity” of two sovereigns by breaking the laws of each, he has committed two distinct “offences.” United States v. Lanza, 260 U.S. 377, 382 (1922). As the Court explained in Moore v. Illinois, 14 How. 13,19 (1852), “[an] offense, in its legal signification, means the transgression of a law.” Consequently, when the same act transgresses the laws of two sovereigns, “it cannot be truly averred that the offender has been twice punished for the same offense; but only that by one act he has committed two offenses, for each of which he is justly punishable.” Id., at 20.
In applying the dual sovereignty doctrine, then, the crucial determination is whether the two entities that seek successively to prosecute a defendant for the same course of conduct can be termed separate sovereigns. This determination turns on whether the two entities draw their authority to punish the offender from distinct sources of power. See, e.g., United States v. Wheeler, 435 U.S. 313, 320 (1978); Waller v. Florida, 397 U.S. 387, 393 (1970); Puerto Rico v. Shell Co., 302 U.S. 253, 264-265 (1937); Lanza, supra, at 382; Grafton v. United States, 206 U.S. 333, 354-355 (1907). Thus, the Court has uniformly held that the States are separate sovereigns with respect to the Federal Government because each State’s power to prosecute is derived from its own “inherent sovereignty,” not from the Federal Government. Wheeler, supra, at 320, n. 14. See Abbate v. United States, 359 U.S. 187, 193-194 (1959) (collecting cases); Lanza, supra. As stated in Lanza, supra, at 382:
“Each government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other.
*167 “It follows that an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each.” See also Bartkus v. Illinois, 359 U.S. 121 (1959); Westfall v. United States, 274 U.S. 256, 258 (1927) (Holmes, J.) (the proposition that the State and Federal Governments may punish the same conduct “is too plain to need more than statement”).
The States are no less sovereign with respect to each other than they are with respect to the Federal Government. Their powers to undertake criminal prosecutions derive from separate and independent sources of power and authority originally belonging to them before admission to the Union and preserved to them by the Tenth Amendment. [Id. at 88-89.]
The Court further explained that in cases where it had found the dual sovereignty doctrine inapplicable, it had done so “because the two prosecuting entities did not derive their powers to prosecute from independent sources of authority.” Id. at 90. The Court explicitly rejected the balancing of interests approach adopted by this Court in Cooper. Id. at 92-93.
The correctness of the Cooper decision, particularly in light of the United States Supreme Court’s decision in Heath, has already been questioned. In People v Mezy,[16] three justices[17] stated that they would overrule Cooper and hold that the double jeopardy provisions of the Michigan Constitution and the United States Constitution did not bar successive state and federal prosecutions. 453 Mich at 272. The justices noted that the United States Supreme Court had consistently held that successive state and federal prosecutions did not violate double jeopardy. Id. at 278-280. Further, the *168 justices noted that there was no “ ‘compelling’ ” reason to afford greater protection under the Michigan double jeopardy provision than the federal and that the two provisions should be treated as “ ‘affording the same protections.’ ” Id. at 280-281, quoting People v Perlos, 436 Mich 305, 313 n 7; 462 NW2d 310 (1990).[18]
Consistent with the United States Supreme Court decision in Heath and with the reasoning of three justices of this Court in Mezy, we now overrule People v Cooper.[19] As noted in Nutt, the common understanding of the people at the time that our double jeopardy provision was ratified was that the provision would be construed consistently with the federal double jeopardy jurisprudence that then existed. Applying the reasoning of Bartkus, which was clearly reaffirmed in Heath, the entities seeking to prosecute in this case — Kentucky and Michigan — are separate sovereigns deriving their authority to punish from distinct sources of power. *169 Therefore, the prosecution of defendant in Michigan for the theft of the automobile is not barred by double jeopardy.[20]
The decision of the Court of Appeals affirming the trial court’s order granting defendant’s motion to quash is reversed and the case is remanded to the trial court for proceedings consistent with this opinion.
Taylor, C.J., and Corrigan, Young, and Markman, JJ., concurred with WEAVER, J.

 Const 1963, art 1, § 15.

 398 Mich 450; 247 NW2d 866 (1976).

 Ky Rev Stat Ann 514.030.

 Ky Rev Stat Ann 506.010 and 506.020 address criminal attempt.

 MCL 750.413 and 750.535(3)(a).

 Const 1963, art 1, § 15.

 People v Davis, unpublished opinion per curiam of the Court of Appeals, issued November 25, 2003 (Docket No. 242207).

 453 Mich 269; 551 NW2d 389 (1996).

 470 Mich 870 (2004).

 Justice Kelly in dissent asserts that the majority answers the wrong question when it decides whether this Court “correctly applied the doctrine of dual sovereignty in People v Cooper,“The appropriate question,” she asserts, “is whether the Cooper decision correctly interpreted our state’s constitution.” Post at 175. The dissent is mistaken. There is no difference between the “question” as phrased by the majority and the “question” as phrased by the dissent; both are ways of stating the issue in this case, which is whether Michigan’s Constitution prohibits charging and trying defendant in Michigan for the theft of an automobile from Michigan after he pleaded guilty in Kentucky, where he was apprehended, of attempted theft of the automobile.

 359 US 121; 79 S Ct 676; 3 L Ed 2d 684 (1959).

 Justice Kelly references the more than thirty years of case law on which Bartkus was based but then asserts that the foundation for Bartkus is “questionable” and that it was undermined by Benton v Maryland, 395 US 784; 89 S Ct 2056; 23 L Ed 2d 707 (1969). Post at 171, 172. We disagree. As noted in Bartkus, the body of precedent on which it relied provided “irrefutable evidence that state and federal courts have for years refused to bar a second trial even though there had been a prior trial by another government for a similar offense,” and concluded that “it would be disregard of a long, unbroken, unquestioned course of impressive adjudication for the Court now to rule that due process compels such a bar.” Bartkus, supra at 136. Moreover, the Heath case discussed later in this opinion makes it clear that the United States Supreme Court meant what it said in Bartkus.

 The Cooper Court cited Elkins v United States, 364 US 206; 80 S Ct 1437; 4 L Ed 2d 1669 (1960), and Murphy v Waterfront Comm of New York Harbor, 378 US 52; 84 S Ct 1594; 12 L Ed 2d 678 (1964), as cases that undermined the Bartkus decision. But neither case specifically addressed whether successive prosecutions were barred by double jeopardy. The issue in Elkins was whether “articles obtained as the result of an unreasonable search and seizure by state officers, without involvement of federal officers, [may] be introduced in evidence against a defendant over his timely objection in a federal criminal trial.” 364 US at 208. And the issue presented in Murphy was “whether one jurisdiction within our federal structure may compel a witness, whom it has immunized from prosecution under its laws, to give testimony which might then be used to convict him of a crime against another such jurisdiction.” 378 US at 53.

 Similarly, the dissent by Justice Kelly is based on nothing more than its disagreement with the Bartkus decision and its desire to substitute its own double jeopardy policy for the double jeopardy analysis that the language and history of Michigan’s double jeopardy provision requires.

 474 US 82; 106 S Ct 433; 88 L Ed 2d 387 (1985).

 453 Mich 269; 551 NW2d 389 (1996).

 The opinion was written by Justice Weaver and signed by Justices Boyle and Riley.

 The justices also noted that, contrary to the Cooper Court’s decision, the majority of states hold that both the United States Constitution and their constitutions allow for dual prosecutions by the state and federal governments. 453 Mich at 281 n 14.

 As recently noted, although we overrule precedent with caution, the doctrine of stare decisis is not applied mechanically to prevent the Court from overruling previous decisions that are erroneous. We may overrule a prior decision when we are certain that it was wrongly decided and “ ‘less injury will result from overruling than from following it.’ ” People v Moore, 470 Mich 56, 69 n 17; 679 NW2d 41 (2004), quoting McEvoy v Sault Ste Marie, 136 Mich 172, 178; 98 NW 1006 (1904). The United States Supreme Court decision in Heath clearly demonstrates that the Cooper Court was wrong about any “trend” that it thought it observed in United States Supreme Court case law concerning dual sovereignty and double jeopardy. Further, the Cooper Court failed to consider the language of our double jeopardy provision or its historical context. Additionally, there are no relevant “reliance” interests involved and therefore overruling Cooper would not produce any “practical real-world dislocations.” See Robinson v Detroit, 462 Mich 439, 466; 613 NW2d 307 (2000). Therefore, we overrule the erroneous decision made by the Cooper Court.

 Justice Kelly in dissent asserts that by looking to federal law to guide the interpretation of our double jeopardy provision, we are somehow giving away the people’s sovereignty. Post at 182. We disagree. Rather, it is the dissent’s interpretation that would cede this state’s sovereignty to another state by foreclosing prosecution in Michigan, when there is no evidence in our constitutional history that the people of Michigan sought, in adopting Const 1963, art 1, § 15, to cede any of this state’s sovereignty to the federal government or another state. Any abrogation based on double jeopardy principles of Michigan’s sovereign power to prosecute offenders is a decision properly left to the people by amending the Constitution, and not to this Court. Further, we note that the Michigan Legislature has statutorily forbidden successive prosecutions only with regard to prosecutions concerning illegal drugs. MCL 333.7409 provides: “If a violation of this article is a violation of a federal law or the law of another state, a conviction or acquittal under federal law or the law of another state for the same act is a bar to prosecution in this state.”