*331 KELLY, J.
(dissenting). Regrettably, the majority has again unnecessarily chipped away at the Double Jeopardy Clause of the Michigan Constitution. Therefore, I must dissent.
The record in this case contains no evidence that defendant committed the separate offenses of robbery and larceny. For that reason, the Court of Appeals was correct in concluding that defendant’s convictions and sentences for both armed robbery and felony murder, with the predicate offense being larceny, violated Michigan’s Double Jeopardy Clause.
Additionally, the majority has unnecessarily overruled the test for the multiple-punishment strand of double jeopardy that this Court set forth in People v Robideau, 419 Mich 458; 355 NW2d 592 (1984). I believe that Robideau provides the appropriate protection against multiple punishments in Michigan. Therefore, I must also object to the majority’s decision to overrule it and to the majority’s continuing disregard for the rule of stare decisis.
THE PACTS
On January 7, 2003, store owner Richard Cummings and employee Stephen Putman died from gunshot wounds. During the criminal investigation, the police discovered that $2,000 in cash was missing from the store, in addition to the store’s cash proceeds from that morning. Also missing were the wallets of both victims, the money Cummings carried in his front pocket, and a set of keys to the store. Ultimately, after a jury trial, defendant was convicted of two counts of first-degree felony murder,[1] with larceny as the predicate felony; *332 two counts of armed robbery;[2] and four counts of possession of a firearm during the commission of a felony.[3]
Defendant appealed, arguing that his convictions for both felony murder and armed robbery violated constitutional double jeopardy protections. People v Smith, unpublished opinion per curiam of the Court of Appeals, issued December 27, 2005 (Docket No. 257353). The Court of Appeals agreed and vacated the armed robbery convictions and the corresponding felony-firearm convictions, as well as the sentences for those convictions. The Court specifically noted that “[b]e-cause larceny is a necessarily included lesser offense of robbery, and because, factually, there was no evidence that defendant committed separate offenses of robbery and larceny, defendant’s armed robbery convictions violate double jeopardy.” Id., slip op at 2. The prosecution sought leave to appeal in this Court, contending that the Court of Appeals erred in its double jeopardy analysis.
INSUFFICIENT EVIDENCE
A majority of this Court concludes that the Court of Appeals erred in its double jeopardy analysis by comparing the felony-murder conviction to the non-predicate felony of armed robbery. According to the majority, because armed robbery was not the predicate felony involved in the felony-murder conviction, reversal is not required pursuant to People v Wilder, 411 Mich 328; 308 NW2d 112 (1981). I disagree with the majority’s conclusion. Rather, I believe that the Court of Appeals correctly concluded that there was no evi *333 dence that defendant committed the separate offenses of robbery and larceny.
In his opening statement, the prosecutor argued to the jury that defendant took the following items: Put-man’s wallet, Cummings’s cash, Cummings’s wallet, the keys to the store, and the cash from the cash register. The prosecutor also explained that, in order to prove felony murder, all he had to show was (1) that defendant murdered Cummings and Putman, (2) that he did it with malice, and (3) that he was attempting a larceny at the time he committed the murders. With regard to the armed robbery, the prosecutor explained that he had to prove that defendant committed robbery with a gun.
In his closing statement, the prosecutor summarized for the jury what he believed the evidence showed. Specifically, with regard to the armed robbery, the prosecutor noted (1) that defendant took the keys and (2) that money was taken from several locations, including Cummings’s front pocket, the men’s wallets, and the cash drawer. With regard to felony murder, the prosecutor argued that defendant caused the deaths of Cummings and Putman. He said that, when defendant caused their deaths, defendant had the intent either to kill the victims or to do them great bodily harm. With regard to the predicate offense of larceny, the prosecutor explained that, if defendant “was either stealing or attempting to steal at the time he killed these two men, which we have shown, he is guilty as charged of both counts of Felony Murder.”
Although a prosecutor’s comments are not evidence, they are intended to summarize the evidence put before the jury. Clearly, the prosecutor in this case did not distinguish between the separate acts of armed robbery and larceny. Rather, he treated the two crimes as *334 interchangeable and failed to identify the items stolen with the individual crimes. In fact, when restating the items that defendant allegedly stole during the armed robbery, the prosecutor named all the stolen items.
However, if defendant stole all the items during the armed robbery, none remained to be stolen during the larceny. In order to satisfy the predicate offense of larceny, the prosecutor stated that he had already shown that defendant was either stealing or attempting to steal from the two men. However, when he made that assertion, the prosecutor was referring to the proofs he had just discussed with regard to the armed robbery. Accordingly, the Court of Appeals correctly concluded that there was no evidence that defendant committed both armed robbery and larceny.
The majority notes that a reasonable juror could have concluded that there were two separate takings: the money from the cash drawer and the wallets from the victims. However, the prosecutor did not make this distinction. Moreover, the facts of this case should not be read in a vacuum. In making the distinction it does, the majority is essentially acting as a super-prosecutor and a thirteenth juror.
The Court of Appeals correctly concluded that there was insufficient evidence of two takings, and that defendant was convicted of both felony murder and the predicate felony. As the Court noted, it is well established that convictions and sentences for both felony murder and the predicate felony for felony murder violate double jeopardy. Wilder, 411 Mich at 345-347. The proper remedy is to vacate the conviction and sentence for the underlying felony. Accordingly, I would affirm the Court of Appeals judgment and vacate defendant’s two convictions for armed robbery and the cor *335 responding two convictions for felony-firearm, as well as the sentences for those convictions.[4]
THE DOUBLE JEOPARDY ISSUE
It is unnecessary in this case for the Court to choose whether the proper test for determining if a double jeopardy violation has occurred is set forth in Blockburger[5] or Robideau. However, the majority takes this step, and I state my strong disagreement. Robideau should not be overruled.
The Double Jeopardy Clause of the Michigan Constitution[6] provides: “No person shall be subject for the same offense to be twice put in jeopardy.” Similarly, the Double Jeopardy Clause of the United States Constitution[7] provides: “No person shall be . . . subject for the same offence to be twice put in jeopardy of life or limb . .. ,”[8]
The Double Jeopardy Clause primarily offers three protections: it protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. Robideau, 419 Mich at 468, citing North Carolina v Pearce, 395 US 711, 717; 89 S Ct 2072; 23 L Ed 2d 656 (1969).
*336 The first two protections are commonly referred to as the “successive prosecution” strand, and the third protection is commonly referred to as the “multiple punishment” strand. According to the majority, the instant case concerns the third protection. As noted in Robideau, “[t]he Double Jeopardy Clause prohibits a court from imposing more punishment than that intended by the Legislature.” Robideau, 419 Mich at 469. Accordingly, “ ‘the question under the Double Jeopardy Clause whether punishments are “multiple” is essentially one of legislative intent....’” Id., quoting Ohio v Johnson, 467 US 493, 499; 104 S Ct 2536; 81 L Ed 2d 425 (1984).
RECENT CHANGES IN MICHIGAN’S DOUBLE JEOPARDY JURISPRUDENCE
It should be noted that there are few areas of the law in which the current Michigan Supreme Court majority has altered state law more than double jeopardy jurisprudence. Ten years after the 1963 Michigan Constitution was ratified, this Court decided People v White, 390 Mich 245; 212 NW2d 222 (1973). There, the Court held that the “same transaction” test should be used to determine if serial prosecutions violate the state constitution’s double jeopardy provision. Id.
Thirty years later, the majority of this Court[9] overruled White and instead adopted the “same elements” test, also referred to as the Blockburger test. People v Nutt, 469 Mich 565; 677 NW2d 1 (2004). Specifically, the majority in Nutt concluded that, in adopting the Michigan Double Jeopardy Clause, “the people of this state intended that our double jeopardy provision would be construed consistently with Michigan precedent and the Fifth Amendment.” Id. at 591. Accordingly, because *337 federal courts used the same-elements test in interpreting the term “same offence” under the federal constitution, this Court likewise adopted the same-elements test. Id. at 576, 592.
The dissent in Nutt[10] rejected the majority’s application of the same-elements test and noted that it “is not as entrenched in federal jurisprudence as the majority claims.” Id. at 597 (CAVANAGH, J., dissenting). The dissent noted that the United States Supreme Court has used other tests, because it recognized that the same-elements test is not an adequate safeguard to protect a citizen’s double jeopardy rights. Id. at 598-599, citing Ashe v Swenson, 397 US 436, 443-444, 447; 90 S Ct 1189; 25 L Ed 2d 469 (1970), Ball v United States, 470 US 856, 105 S Ct 1668, 84 L Ed 2d 740 (1985), In re Nielson, 131 US 176; 9 S Ct 672, 33 L Ed 118 (1889), Harris v Oklahoma, 433 US 682; 97 S Ct 2912; 53 L Ed 2d 1054 (1977), and Brown v Ohio, 432 US 161; 97 S Ct 2221; 53 L Ed 2d 187 (1977).
Specifically, the dissent noted that a technical comparison of the elements is neither constitutionally sound nor easy to apply. Nutt, 469 Mich at 600. Essentially, the dissent opined that the same-elements test is nothing more than a method that can be used to interpret statutes. Id. at 598, citing Albernaz v United States, 450 US 333, 340; 101 S Ct 1137; 67 L Ed 2d 275 (1981).
In a similar vein, in 1976, this Court decided People v Cooper, 398 Mich 450; 247 NW2d 866 (1976). In Cooper, the defendant was acquitted in federal court, then tried in state court on charges for the same criminal act. Id. at 453. The issue was whether his right to be free from double jeopardy under either the Michigan or United *338 States Constitution had been violated. Id. We held that “Const 1963, art 1, § 15 prohibits a second prosecution for an offense arising out of the same criminal act unless it appears from the record that the interests of the State of Michigan and the jurisdiction which initially prosecuted are substantially different.” Id. at 461.
Again, nearly 30 years later, the same majority of the Michigan Supreme Court that overruled White in Nutt overruled Cooper in People v Davis, 472 Mich 156; 695 NW2d 45 (2005).[11] The majority in Davis relied on its analysis in Nutt for this proposition: The double jeopardy provision of the Michigan Constitution should be construed consistently with federal double jeopardy jurisprudence that existed at the time the 1963 Michigan Constitution was ratified. Id. at 168. Accordingly, applying federal double jeopardy jurisprudence, the majority in Davis concluded that the Michigan Double Jeopardy Clause did not bar the defendant’s successive prosecutions in Michigan and Kentucky. Id. at 158. The reason was that the states are separate sovereigns deriving their authority to punish from distinct sources of power. Id.
I dissented in Davis.[12] My dissent reviewed this state’s common-law history before we became a state, our constitutional history, and the language of the Address to the People before the constitution was ratified in 1963. It rejected the majority’s claim that the voters of our state intended that Michigan’s Double Jeopardy Clause be interpreted exactly as the federal provision is interpreted. Id. at 182 (KELLY, J., dissenting). I also noted that Cooper properly relied on the *339 Michigan Constitution, and that the Cooper rule was necessary to protect the individual’s and the state’s respective interests. Id. at 184.[13]
Finally, we come to the instant case. In 1984, this Court decided Robideau and specifically addressed the multiple-punishment strand of Michigan’s Double Jeopardy Clause. The Court noted that, although the United States Supreme Court had adopted the Block-burger same-elements test, the United States Supreme Court’s treatment of issues of multiple punishment suggested a struggle to set forth a single standard. Robideau, 419 Mich at 479.
Turning to Michigan caselaw, Robideau concluded that Michigan’s double jeopardy analysis had been no more consistent than federal double jeopardy analysis. Id. at 484. In deciding the appropriate test to use in Michigan, this Court explicitly rejected the Blockburger test. Id. at 485-486. Specifically, it stated that, although Blockburger’s “creation of a presumption may make a court’s task easier, it may also induce a court to avoid difficult questions of legislative intent in favor of the wooden application of a simplistic test.” Id. at 486. Instead, this Court used the traditional means of determining legislative intent: the subject, language, and history of the statutes. Id.
Now, more than 20 years after Robideau was decided, the same majority that overturned White and Cooper overturns Robideau. Relying once again on its analysis in Nutt, the majority holds that Blockburger set forth *340 the proper test to determine when multiple punishments are barred on double jeopardy grounds.
It is beyond argument that the majority of this Court has systematically and drastically altered Michigan double jeopardy jurisprudence. For nearly 30 years, this Court applied White to cases involving successive prosecutions and Cooper to cases involving two sovereigns. For more than 20 years, this Court applied Robideau to cases involving multiple punishments. However, in rapid succession, the majority of this Court has discarded each of these precedents and created its own double jeopardy jurisprudence.
I dissented in Nutt and Davis because I did not agree that White and Cooper should have been overturned. Today, I again dissent because I do not agree that Robideau should be overturned.
THE ROBINSON[14] FACTORS
A. WHETHER THE CASE WAS WRONGLY DECIDED
This Court laid out the factors to consider in departing from the rule of stare decisis in the Robinson case: (1) whether the earlier decision was wrongly decided, (2) whether the decision at issue defies “practical workability,” (3) whether reliance interests would work an undue hardship if the authority is overturned, and (4) whether changes in the law make the decision no longer justified. Robinson, 462 Mich at 464.[15]
*341 First, I believe Robideau was correctly decided. In Robideau, this Court exhaustively reviewed federal caselaw concerning double jeopardy. Robideau, 419 Mich at 472-480. After concluding that federal jurisprudence offered no concrete guidance, this Court exhaustively reviewed Michigan caselaw concerning Michigan’s Double Jeopardy Clause. Id. at 480-484. Similarly, this Court found that Michigan’s double jeopardy analysis had not been consistent. Id. at 484.
This Court noted that it had concluded in White that the transactional approach was the correct standard to use with regard to successive prosecutions. Id. at 485. However, because different interests were involved, a different standard was needed for cases involving multiple punishments. Id. Accordingly, after conducting an extensive caselaw analysis, this Court explicitly rejected the Blockburger test, preferring instead traditional means of determining the intent of the Legislature: the subject, language, and history of the statutes. Id. at 486.[16]
Robideau was based on the Michigan Constitution and Michigan caselaw. The test in Robideau adequately safeguards a Michigan citizen’s right to be free from multiple punishments for the same offense. As noted in *342 Robideau, when multiple punishments are involved, the Double Jeopardy Clause is a restraint on the prosecution and the courts, not on the Legislature. Id. at 469. The test in Robideau ensures that the defendant does not receive more punishment than intended by the Legislature. Accordingly, it adequately protects the double jeopardy rights of Michigan citizens.
Moreover, the Robideau Court was free to use its own preferred methods of ascertaining judicial intent. As noted repeatedly throughout Robideau, the Block-burger test is simply a method for determining legislative intent. Robideau, 419 Mich at 473, 478, citing Gore v United States, 357 US 386; 78 S Ct 1280; 2 L Ed 2d 1405 (1958) (stressing that Blockburger was decided as a matter of legislative intent), and Albernaz, 450 US at 338 (noting that the Blockburger test was merely a means to determine legislative intent and that the presumption created by the Blockburger test could be rebutted by a clear indication of legislative intent to the contrary).
I believe this is the proper lens through which to view Blockburger: It is simply one of many methods by which a court can discern the Legislature’s intent. It is not a definitive test that should, or could, be used in every case. Indeed, as noted by this Court in Robideau, “it would be quite contrary to established principles of federalism for the United States Supreme Court to impose on the states the method by which they must interpret the actions of their own legislatures.” Robideau, 419 Mich at 486. Accordingly, the Robideau Court was within its authority to reject the Blockburger test and instead fashion a test that properly reflected the protections of the Michigan Constitution.
The majority believes that the constitution’s ratifiers intended our double jeopardy provision to be construed *343 consistently with the interpretation given the Fifth Amendment by federal courts at the time of ratification. I disagree. As I noted in my dissent in Davis, the sole concern in revisiting the Double Jeopardy Clause in our state constitution was to clarify that jeopardy attaches when a jury is sworn, as our courts had interpreted. Davis, 472 Mich at 181 (KELLY, J., dissenting).
In Davis, I also rejected the majority’s claim that the people of Michigan intended to adopt the federal interpretation of the Double Jeopardy Clause. Id. Specifically, I did not agree with the majority that the ratifiers knew how the United States Supreme Court had interpreted the federal Double Jeopardy Clause and that they accepted it. Id. I did not agree that the ratifiers were willing to allow the federal government to interpret our constitution for us. Id. I continue to believe that my analysis in Davis was correct. Therefore, I continue to reject the majority’s presumption that the voters of our state intended that Michigan’s Double Jeopardy Clause be interpreted exactly as the federal provision is interpreted.
The majority overturns Robideau also in the belief that the Michigan Constitution does not afford greater protections than does the Fifth Amendment of the United States Constitution. As an initial matter, I would note that the Robideau Court did not expressly base its decision on this assertion. Regardless, this Court has, for decades, determined that our constitutional prohibition against double jeopardy affords greater protection than does the Fifth Amendment. See, e.g., Robideau, 419 Mich at 507 n 5 (CAVANAGH, J., dissenting), citing People v Wakeford, 418 Mich 95, 105 n 9; 341 NW2d 68 (1983), People v Carter, 415 Mich 558, 582-584; 330 NW2d 314 (1982), Wilder, 411 Mich at 343-349, People v Jankowski, 408 Mich 79, 91-92, 96; *344 289 NW2d 674 (1980), and White. Accordingly, for the reasons I have stated, I continue to believe Robideau was correctly decided.
B. PRACTICAL WORKABILITY PROBLEMS
The next Robinson factor to consider is whether the decision at issue defies “practical workability.” Robinson, 462 Mich at 464. I do not believe that it does. In interpreting statutes, courts are charged with the responsibility to determine the Legislature’s intent in writing such statutes. In re MCI Telecom Complaint, 460 Mich 396, 411; 596 NW2d 164 (1999). Robideau set forth a nonexhaustive list of factors a court could consider in determining legislative intent. I believe that the test set forth in Robideau is workable. It is no more difficult to apply than any other method that this Court uses to discern the Legislature’s intent.
The majority adopts the Blockburger test. However, as indicated by the Robideau Court, the Blockburger test is not an easy test to apply consistently. This Court noted that, among other difficulties that arise from the application of the Blockburger test, it “fails to recognize that the Legislature does not always create crimes in neat packages which are susceptible to a pure greater and lesser included offense analysis.” Robideau, 419 Mich at 487 n 6. Moreover, the Blockburger test “may also induce a court to avoid difficult questions of legislative intent in favor of the wooden application of a simplistic test.” Id. at 486. The difficulty in applying Blockburger is one of the reasons, if not the main reason, this Court specifically declined to adopt the Blockburger test.
In Nutt,[17] the dissent noted that the Blockburger test is an inadequate safeguard because it leaves the consti *345 tutional guarantee at the mercy of the Legislature’s decision to modify statutory definitions. Nutt, 469 Mich at 600, quoting United States v Dixon, 509 US 688, 735; 113 S Ct 2849; 125 L Ed 2d 556 (1993) (White, J., dissenting). Therefore, it is the Blockburger test, not the Robideau test, that defies practical workability.
C. HARDSHIP BECAUSE OF RELIANCE
The next Robinson factor to consider is whether, if the decision were overturned, reliance interests would work an undue hardship. Robinson, 462 Mich at 464. “[T]he Court must ask whether the previous decision has become so embedded, so accepted, so fundamental, to everyone’s expectations that to change it would produce not just readjustments, but practical real-world dislocations.” Id. at 466. Overturning Robideau would work an undue hardship. As indicated above, Michigan courts have followed the test for more than 20 years. It has become a fundamental part of Michigan double jeopardy jurisprudence.
D. CHANGES IN THE LAW
The final Robinson factor is whether changes in the law make the decision no longer justified. Id. at 464. There has been no change in Michigan’s Double Jeopardy Clause, and the test set forth in Robideau has been applied since its inception in 1984.
The majority notes that the concern expressed by this Court in Robideau that Blockburger does not account for cognate lesser-included offenses is no longer pertinent in light of People v Cornell, 466 Mich 335, 353; 646 NW2d 127 (2002). As an initial matter, the Robideau Court’s reasoning was much more diverse than the majority implies. The Robideau Court did not reject *346 the Blockburger test solely because it did not account for cognate lesser-included offenses. Rather, this Court noted that federal double jeopardy jurisprudence was inconsistent and that Blockburger was difficult to apply.
Regardless, in Cornell, the same majority that overturned White, Cooper, and now Robideau held that an offense is an “offense inferior to that charged in the indictment” for purposes of MCL 768.32(1) when “ ‘the lesser offense can be proved by the same facts that are used to establish the charged offense.’ ” Id. at 354-355 (citation omitted).
I dissented in Cornell and noted" that, in coming to this conclusion, the majority strayed beyond the matter at hand, which was lesser-included misdemeanor offenses. Cornell, 466 Mich at 376 (KELLY, J., dissenting). I noted that, whereas the majority devoted pages of discussion to cognate lesser included offenses, its holding applied to necessarily included felony offenses. Therefore, I disagreed with the majority’s analysis in Cornell and do not believe it affects the instant case.
Accordingly, after considering all the Robinson factors, I conclude that Robideau should not be overturned.
CONCLUSION
There was no need, other than one springing from the majority’s desire to rewrite Michigan double jeopardy jurisprudence, to overturn Robideau or determine whether Robideau or Blockburger is the appropriate test to apply. Rather, the Court of Appeals was correct. There was no evidence in this case that defendant committed the separate offenses of robbery and larceny. His armed robbery convictions violate double jeopardy.
*347 Additionally, because I believe that Robideau provides the appropriate protection against multiple punishments in Michigan, I must also dissent from the majority’s decision to overturn that decision. Application of the Robinson factors supports my position.
I would affirm the Court of Appeals judgment and vacate defendant’s two convictions for armed robbery and the two corresponding convictions for felony-firearm, as well as the sentences for those convictions.

 MCL 750.316(1)(b).

 MCL 750.529.

 MCL 750.227b.

 The majority notes that its approach to double jeopardy will better ensure that criminal perpetrators be punished for all, not merely some, of their offenses. A telling flaw that I find with the majority’s approach is that, in its zeal, it will at times punish a defendant twice for the same offense.

 Blockburger v United States, 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932).

 Const 1963, art 1, § 15.

 US Const, Am V

 In Benton v Maryland, 395 US 784; 89 S Ct 2056; 23 L Ed 2d 707 (1969), the United States Supreme Court held that the federal Double Jeopardy Clause was applicable to actions by the states.

 Justice Young wrote the majority opinion, which was signed by then-Chief Justice Corrigan and Justices Weaver, Taylor, and Markman.

 Justice Cavanagh wrote the dissent, and I signed it, as well.

 Justice Weaver wrote the majority opinion, which was signed by Chief Justice Taylor and Justices Corrigan, Young, and Markman.

 Justice Cavanagh concurred with my dissent. Id. at 191 (Cavanagh, J., dissenting).

 The majority claims that I would overrule all of the existing double jeopardy jurisprudence. This is inaccurate. My concern is simply with the majority’s contributions to our double jeopardy jurisprudence. In that regard, I have consistently dissented. As I noted in my dissents in Davis, Nutt, and in this case, I would have upheld Michigan’s double jeopardy jurisprudence as it existed before the instant majority began mangling it.

 Robinson v Detroit, 462 Mich 439; 613 NW2d 307 (2000).

 It is worth noting that the same majority that overrules Robideau today set forth in Robinson the test for departing from the rule of stare decisis. Notwithstanding the fact that it created this test, the majority pays little attention to it and instead goes through the Robinson factors in a footnote.

 Specifically, this Court set forth a nonexhaustive fist of considerations:
Statutes prohibiting conduct that is violative of distinct social norms can generally he viewed as separate and amenable to permitting multiple punishments. A court must identify the type of harm the Legislature intended to prevent. Where two statutes prohibit violations of the same social norm, albeit in a somewhat different manner, as a general principle it can be concluded that the Legislature did not intend multiple punishments. ...
A further source of legislative intent can be found in the amount of punishment expressly authorized by the Legislature. [Robideau, 419 Mich at 487.]

 469 Mich at 565 (Cavanagh, J., dissenting).