# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MICHAEL TERREAL DAVIS,

Defendant-Appellant.

UNPUBLISHED
May 24, 2016

No.  325565
Wayne Circuit Court
LC No.  13-010643-FC

Before:  OWENS, P.J., and BORRELLO and STEPHENS, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of second-degree murder, MCL 750.317, two counts of unlawful imprisonment, MCL 750.349b, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.  Defendant was sentenced, as a third habitual offender, MCL 769.11, to concurrent terms of 28 to 50 years' imprisonment for the second-degree murder conviction and 10 to 15 years' imprisonment for each of the two unlawful imprisonment convictions, to be served consecutively to the mandatory two-year term of imprisonment for felony-firearm.  We affirm defendant's convictions, but remand to the trial court for possible resentencing.

Defendant first contends that the trial court was biased against him.  We disagree.

A claim of judicial bias with regard to a trial court's rulings and remarks must be raised before the trial court in order to be preserved.  *People v Stevens*, 498 Mich 162, 180; 869 NW2d 233 (2015); *People v Jackson*, 292 Mich App 583, 597; 808 NW2d 541 (2011); *People v Sardy*, 216 Mich App 111, 117-118; 549 NW2d 23 (1996).  Defendant did not do so, and therefore this issue was not properly preserved.  An unpreserved claim of judicial bias is reviewed for plain error affecting defendant's substantial rights.  *Jackson*, 292 Mich App at 597.

In *Stevens*, 498 Mich at 170-171, the Supreme Court set forth the following standard for evaluating a claim of judicial misconduct:

> A judge's conduct pierces [the veil of judicial impartiality] and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party.  [*Id.* at 171 (footnote omitted).]

-1-

In *Stevens*, the Michigan Supreme Court cautioned that this is a "fact-specific analysis[,]" *id.*, and the pivotal inquiry is whether "the judge's conduct was sufficiently severe and clear so as to create the appearance of bias against the aggrieved party," *id.* n 3. A reviewing court should consider "the totality of the circumstances," and the following factors must be considered:

> In evaluating the totality of the circumstances, the reviewing court should inquire into a variety of factors, including the nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions. This list of factors is not intended to be exhaustive. [*Id.* at 172 (citations omitted).]

When undertaking this review, it must be remembered that the trial court is presumed to have been impartial. *Stevens*, 498 Mich at 175.

We have closely reviewed each of defendant's allegations of judicial bias, and, viewing the totality of the circumstances in this case, *Stevens*, 498 Mich at 171, the record does not support a conclusion that the trial court's conduct "creat[ed] the appearance of advocacy or partiality" against one party more than the other, *id*.

A review of the record confirms that the trial court engaged in similar behavior with the prosecutor, closely controlling the prosecutor's questioning of witnesses. *Stevens*, 498 Mich at 172. Additionally, the trial court provided the following curative instruction at the close of the proofs:

> And this trial, I have had to be a little active asking people not to repeat questions, ruling on objections. The fact that I might have overruled something once or twice or somebody might have been more vocal than another, that doesn't have anything to do without how you should handle yourselves in this matter.

The trial court also instructed the jury at the beginning of trial that it was to decide the case on the basis of the evidence, and that "[a]nything that I say is not evidence." "[J]urors are presumed to follow their instructions." *Stevens*, 498 Mich at 177, quoting *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Accordingly, we are satisfied that these instructions "alleviate[d] any appearance of advocacy or partiality by the judge[,]" *Stevens*, 498 Mich at 177, and protected defendant's right to a fair trial.

Defendant next asserts that the trial court erred in declaring a mistrial following defendant's first trial when defendant did not consent to a mistrial or the court did not find that manifest necessity warranted declaring a mistrial. We disagree.

Following defendant's first jury trial, on charges of first-degree premeditated murder, MCL 750.316, torture, MCL 750.85(1), unlawful imprisonment, MCL 750.349b, possession of a firearm by a felon (felon-in-possession), MCL 750.224f, and felony-firearm, MCL 750.227b, the jury acquitted defendant of first-degree premeditated murder and torture, and the trial court declared a mistrial on the basis that the jury was deadlocked on the remaining counts.

"A constitutional double jeopardy challenge presents a question of law that [this Court] reviews de novo." *People v Lett*, 466 Mich 206, 212-213; 644 NW2d 743 (2002), quoting *People v Herron*, 464 Mich 593, 599; 628 NW2d 528 (2001). This Court reviews a trial court's decision to declare a mistrial for an abuse of discretion. *Lett*, 466 Mich at 220. An abuse of discretion occurs when the trial court's decision fell outside the range of principled outcomes. *People v Blevins*, ___ Mich App ___, ___; ___ NW2d ___ (2016) (Docket No. 315774); slip op at 9.

In *People v Ackah-Essien*, 311 Mich App 13, 31-32; 874 NW2d 172 (2015), this Court set forth the following principles of law concerning the protections against double jeopardy.

> The United States and Michigan Constitutions prohibit placing a defendant twice in jeopardy for a single offense. US Const Am V; Const 1963, art 1, § 15; [*People v Ream*, 481 Mich 223, 227; 750 NW2d 536 (2008)]. The state and federal constitutional guarantees are substantially identical and should be similarly construed. *People v Davis*, 472 Mich 156, 161-162; 695 NW2d 45 (2005). The Double Jeopardy Clause precludes the prosecution from making repeated attempts to convict a defendant for the same offense. *Lett*, 466 Mich at 214; 644 NW2d 743. Once jeopardy has attached, the accused has a valuable right in having his or her trial concluded by the jury sworn to hear the case. *Id.* at 214-215; 644 NW2d 743. [*Ackah-Essien*, 311 Mich App at 31-32.]

The United States Supreme Court recently explained the rationale underlying the prohibition against successive prosecutions; elucidating that it " 'guarantees the State shall not be permitted to make repeated attempts to convict the accused, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity. . . .' " *Blueford v Arkansas*, ___ US ___, ___; 132 S Ct 2044, 2050; 182 L Ed 2d 937 (2012), quoting *United States v Martin Linen Supply Co*, 430 US 564, 569; 97 S Ct 1349; 51 L Ed 2d 642 (1977). " 'If the trial is concluded prematurely, a retrial for that offense is prohibited unless the defendant consented to the interruption or a mistrial was declared because of a manifest necessity.' " *Ackah-Essien*, 311 Mich App at 32, quoting *People v Mehall*, 454 Mich 1, 4; 557 NW2d 110 (1997); see also *Blueford*, 132 S Ct at 2052 (recognizing that a trial can be stopped without precluding a subsequent prosecution for the same offense where specific circumstances "manifest a necessity" to declare a mistrial) (quotation omitted).

The record shows that defendant objected to the declaration of a mistrial. Accordingly, the pivotal issue here is whether the trial court abused its discretion in concluding manifest necessity existed to warrant declaring a mistrial. The Michigan Supreme Court has recognized that a mistrial that results because of jury deadlock is considered a "classic basis for a proper mistrial." *Lett*, 466 Mich at 219, quoting *Arizona v Washington*, 434 US 497, 509; 98 S Ct 824; 54 L Ed 2d 717 (1978) (footnote omitted). Additionally, the trial court's decision to discharge a jury on the basis of jury deadlock "is entitled to great deference." *Lett*, 466 Mich at 219-220.

However, the United States Supreme Court has cautioned that the deference afforded to a trial court is not without limit, and that a trial court's exercise of discretion in the context of declaring a mistrial must be "sound[.]" *Renico v Lett*, 559 US 766, 775; 130 S Ct 1855; 176 L Ed 2d 678 (2010) (citation omitted).

"[I]f the record reveals that the trial judge has failed to exercise the 'sound discretion' entrusted to him, the reason for such deference by an appellate court disappears." *Washington*, 434 US at 510 n 28; 98 S Ct 824. Thus "if the trial judge acts for reasons completely unrelated to the trial problem which purports to be the basis for the mistrial ruling, close appellate scrutiny is appropriate." *Ibid*. Similarly, "if a trial judge acts irrationally or irresponsibly, . . . his action cannot be condoned." *Id*., at 514; 98 S Ct 824 (citing *United States v Jorn*, 400 US 470; 91 S Ct 547; 27 L Ed 2d 543 (1971), and [*Illinois v Somerville*, 410 US 458, 462; 93 S Ct 1066; 35 L Ed 2d 425 (1973)]. [*Renico*, 559 US at 775.]

Affording the trial court great deference in its ultimate decision, we do not agree with defendant that any abuse of discretion occurred. The record reflects that when first informed that the jury was struggling to reach a unanimous verdict, the trial court gave a lengthy, detailed, and thorough instruction advising the jury how to continue to deliberate with the goal of reaching a unanimous verdict. The trial court subsequently took great time and effort reviewing the notes from the jurors regarding their inability to reach a unanimous verdict on several of the charged counts, and went to the effort of polling each juror individually to determine if there was any possibility of reaching a unanimous verdict. While defendant contends that the trial court did not adhere to the deadlocked jury instruction in M Crim JI 3.12, it is worthy of note that the trial court was not required to give such an instruction. *Renico*, 559 US at 775.

[The United States Supreme Court] [has] never required a trial judge, before declaring a mistrial based on jury deadlock, to force the jury to deliberate for a minimum period of time, to question the jurors individually, to consult with (or obtain the consent of) either the prosecutor or defense counsel, *to issue a supplemental jury instruction*, or to consider any other means of breaking the impasse. [*Id*. (emphasis supplied).]

Additionally, while the jury did deliberate for a relatively short time in defendant's first trial, the testimony in defendant's first trial consumed only 2¼ days, and was not particularly complex. *Lett*, 466 Mich at 223. Further, notes from the jury, as well as the trial transcript, clearly reflected that the jury was deadlocked on several counts, and that there was no possibility of the jury reaching a verdict. The Michigan Supreme Court has held that this is a fact of particular importance in evaluating a trial court's decision to declare a mistrial. *Lett*, 466 Mich at 223. To the extent that defendant argues that the jury should have been required to deliberate longer, the Michigan Supreme Court has cautioned against such action, where it bears the possible danger of coercing a verdict. *Lett*, 466 Mich at 222-223. Finally, defendant's argument that the jury was not "genuinely deadlocked" lacks support in his citation of *Washington*, 434 US at 509, and his assertion is implausible, given that the jury was unequivocal that it could not agree, both on the record with the trial court and in its written notes. Accordingly, on this record, we are not persuaded that the trial court abused its discretion in concluding that manifest necessity existed to warrant declaring a mistrial. In sum, defendant's assertion that his right to be protected against successive prosecutions was violated is without merit.

Finally, defendant argues that the trial court engaged in impermissible judicial fact-finding in assessing points for Offense Variables (OVs) 5, 7, 8 and 14, which violated defendant's Sixth and Fourteenth Amendment rights, and that he is entitled to a remand pursuant

to *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015). We agree and remand to the trial court for possible resentencing.

Defendant concedes that where he did not challenge the trial court's assessment of scores pursuant to certain OVs, this issue is reviewed for plain error affecting defendant's substantial rights. *Lockridge*, 498 Mich at 392; *People v Steanhouse*, ___ Mich App ___, ___; ___ NW2d ___ (2015) (Docket No. 318329); slip op at 21.

In *Lockridge*, 498 Mich at 364, the Michigan Supreme Court concluded that to the extent that Michigan's sentencing guidelines require judicial fact-finding beyond facts admitted by a defendant or necessarily found by the jury, they violate the rule from *Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000), as extended by *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013), and are constitutionally deficient. To address the constitutional infirmity, the Michigan Supreme Court severed MCL 769.34(2) where it made the sentencing guidelines range as scored on the basis of impermissible judicial fact-finding mandatory. *Lockridge*, 498 Mich at 364. The *Lockridge* Court also held that a guidelines minimum sentencing range that violated the rule of *Apprendi*, as extended by *Alleyne*, is "advisory only[,]" but to preserve the Legislature's intent in enacting the guidelines, a sentencing court must still determine the applicable guidelines range and consider it when imposing sentence. *Lockridge*, 498 Mich at 365.

Pursuant to *Lockridge*, 498 Mich at 391, a sentencing court is no longer required to articulate a "substantial and compelling reason" to depart from the guidelines range. A sentence that departs from the guidelines range will now be reviewed for "reasonableness[,]" *id.* at 392, which this Court has observed means that a sentence must be proportionate, *Steanhouse*, ___ Mich App at ___; slip op at 24.

As relevant to this appeal, the Michigan Supreme Court offered the following guidance when a defendant's minimum sentence range was calculated in violation of the Sixth Amendment. *Lockridge*, 498 Mich at 395. Specifically, the *Lockridge* Court stated, in pertinent part, as follows:

> We conclude that all defendants (1) who can demonstrate that their guidelines minimum sentence range was actually constrained by the violation of the Sixth Amendment and (2) whose sentences were not subject to an upward departure can establish a threshold showing of the potential for plain error sufficient to warrant a remand to the trial court for further inquiry. We reach this conclusion in part on the basis of our agreement with the following analysis from *United States v Crosby*, 397 F3d 103, 117-118 (CA 2, 2005):
>
> * * *
>
> [I]n cases in which a defendant's minimum sentence was established by application of the sentencing guidelines in a manner that violated the Sixth Amendment, the case should be remanded to the trial court to determine whether that court would have imposed a materially different sentence but for the constitutional error. If the trial court determines that the answer to that question is

yes, the court shall order resentencing. *Id*. at 118. [*Lockridge*, 498 Mich at 395, 397.]

This procedure has become known as a *Crosby* remand. *Lockridge*, 498 Mich at 397. The *Lockridge* Court then set forth a procedure for the trial court to follow on remand, including allowing the defendant an opportunity to avoid resentencing, and considering only the circumstances that existed at the time of sentencing when determining if it would have imposed a materially different sentence. *Id*. at 398.

To determine whether plain error occurred during sentencing that warrants remand, the first step of this Court's analysis is to determine whether the facts admitted by defendant and necessarily found by the jury "were sufficient to assess the minimum number of OV points necessary for . . . defendant's score to fall in the cell of the sentencing grid under which he . . . was sentenced." *People v Jackson* (*On Reconsideration*), ___ Mich App ___, ___; ___ NW2d ___ (2015) (Docket No. 322350); slip op at 12, quoting *Lockridge*, 498 Mich at 394. If the answer to this query is in the negative, then remand is necessary for the trial court to determine, in light of the now advisory nature of the guidelines, if it would have rendered a "materially different" sentence. *Jackson* (*On Reconsideration*), ___ Mich App at ___; slip op at 12, citing *Lockridge*, 498 Mich at 397. This Court in *People v Terrell*, ___ Mich App ___; ___ NW2d ___ (2015) (Docket No. 321573); slip op at 7-9, also employed this analysis in determining whether judicial fact-finding impacted the defendant's minimum sentence guidelines range. The *Terrell* Court ultimately remanded in that case, where it concluded that the trial court's compulsory adherence to the sentencing guidelines was erroneous in light of *Lockridge*. *Terrell*, ___ Mich App at ___; slip op at 9.

A review of defendant's sentencing information report (SIR) reflects that he was assessed 15 points for OV 5, 50 points for OV 7, 15 points for OV 8 and 10 points for OV 14. While the trial court, the prosecutor, and defense counsel appeared to agree that defendant's total OV score was 165 points, our calculation on the basis of the SIR reflects a total score of 180 points.[1] With a total Prior Record Variable (PRV) score of 30, this placed defendant in the D-III cell of the sentencing grid for a Class M2 (Second-Degree Murder) offense, which for a third habitual offender, called for a minimum sentence range of 270 to 675 months. MCL 777.61.

The trial court assessed 15 points for OV 5 for "serious psychological injury requiring professional treatment" relating to a victim's family member. MCL 777.35(1)(a). Facts supporting the assessment were not admitted by defendant or necessarily found by the jury, given the nature of defendant's charges. Likewise, where the trial court scored 50 points for OV 7 on the basis that "[a] victim was treated with sadism, torture, excessive brutality or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense[,]" MCL 777.37(1)(a), such facts cannot be said to have been necessarily found by the jury to convict defendant of the charged offenses, and were not admitted by defendant.

---

[1] Defendant does not contest, but was also assessed 25 points for OV 1, 5 points for OV 2, 25 points for OV 3, 25 points for OV 6, and 10 points for OV 9.

Additionally, the same could be said for OV 8, where the trial court assessed 15 points, where the relevant statute provides that "[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense[,]" MCL 777.38. In other words, where a conviction of unlawful imprisonment requires that the prosecutor prove that a person was restrained by means of a weapon or dangerous instrument, by secret confinement, or to facilitate the commission of another felony or to facilitate flight after the commission of another felony, MCL 750.349b(1)(a), (b), (c), the facts used to score OV 8 were not necessarily found by the jury and they were also not admitted by defendant. Finally, where 10 points were assessed for OV 14 where the trial court concluded defendant was "a leader in a multiple offender situation," MCL 777.44(1)(a), such facts were also not necessarily found by the jury or admitted by defendant.

Without the 90 points assessed for OVs 5, 8, 7 and 14, defendant's OV score would fall to 90 points, and defendant would have been placed in the D-II cell of the Class M-2 sentencing grid, which, for a third habitual offender, calls for a minimum sentence in the range of 225 to 562 months. MCL 777.61. Defendant would have been placed in the D-II cell regardless of whether defendant's OV score is calculated starting at 165 points as decided in the trial court and as set forth in the SIR, or if calculated at 180 points as we have done. Accordingly, this is a case where the facts admitted by defendant or necessarily found by the jury verdict were "insufficient to assess the minimum number of OV points necessary for . . . defendant's score to fall in the cell of the sentencing grid under which he . . . was sentenced." *Lockridge*, 498 Mich at 395. Consequently, defendant has established that his guidelines minimum range was "actually constrained by the violation of the Sixth Amendment" and has made a "threshold showing of the potential for plain error[,]" thereby warranting remand to the trial court. *Id*.

We affirm defendant's convictions, but remand to the trial court for possible resentencing in accordance with *Lockridge*. We do not retain jurisdiction.

/s/ Donald S. Owens
/s/ Stephen L. Borrello
/s/ Cynthia Diane Stephens

-7-