**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED JUNE 11, 2008

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                             No. 134913

DAVID GORDON REAM,

    Defendant-Appellee.

_____

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                             No. 134925

DAVID GORDON REAM,

    Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

MARKMAN, J.

    At issue here is whether convicting and sentencing a defendant for both first-degree felony murder and the predicate felony violates the "multiple punishments" strand of the Double Jeopardy Clause of the United States and

Michigan constitutions. Following a jury trial, defendant was convicted and sentenced for first-degree felony murder and first-degree criminal sexual conduct, where the latter constituted the predicate felony for the former. The Court of Appeals affirmed defendant's first-degree felony-murder conviction and sentence, but vacated defendant's first-degree criminal sexual conduct conviction and sentence on double-jeopardy grounds. We conclude that convicting and sentencing a defendant for both felony murder and the predicate felony does not necessarily violate the "multiple punishments" strand of the Double Jeopardy Clause, and, thus, we overrule *People v Wilder,* 411 Mich 328, 342; 308 NW2d 112 (1981). Because each of the offenses for which defendant was convicted has an element that the other does not, they are not the "same offense" and, therefore, defendant may be punished for both. Accordingly, we reverse the part of the Court of Appeals judgment that vacated defendant's first-degree criminal sexual conduct conviction and sentence, and we reinstate them. In addition, defendant's application for leave to appeal the judgment of the Court of Appeals is considered, and it is denied, because we are not persuaded that the questions presented should be reviewed by this Court.

## I. FACTS AND PROCEDURAL HISTORY

Defendant forced his 92-year-old neighbor into her bedroom, stripped her of her clothing, and killed her by stabbing her in the abdomen and genital area 23 times with a kitchen knife. Following a jury trial, defendant was convicted and sentenced for first-degree felony murder and first-degree criminal sexual conduct,

2

where the latter was the predicate felony for the felony-murder conviction. The Court of Appeals affirmed defendant's felony-murder conviction and sentence, but vacated the criminal sexual conduct conviction and sentence on double-jeopardy grounds. Unpublished opinion per curiam, issued July 31, 2007 (Docket No. 268266). Both the prosecutor and defendant filed applications for leave to appeal in this Court. We heard oral argument on whether to grant the prosecutor's application or take other peremptory action permitted by MCR 7.302(G)(1). 480 Mich 935 (2007).

## II. STANDARD OF REVIEW

A double-jeopardy challenge presents a question of constitutional law that this Court reviews de novo. *People v Nutt,* 469 Mich 565, 573; 677 NW2d 1 (2004).

## III. ANALYSIS

Const 1963, art 1, § 15 states, "No person shall be subject for the same offense to be twice put in jeopardy."[1] The provision affords individuals "three related protections: (1) it protects against a second prosecution for the same

---

[1] Similarly, US Const, Am V states, "No person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb . . . ." This Court has explained that although we are not "'bound in our understanding of the Michigan Constitution by any particular interpretation of the United States Constitution,'" "we have been persuaded in the past that interpretations of the Double Jeopardy Clause of the Fifth Amendment have accurately conveyed the meaning of Const 1963, art 1, § 15 as well." *People v Smith,* 478 Mich 292, 302 n 7; 733 NW2d 351 (2007), quoting *Harvey v Michigan,* 469 Mich 1, 6 n 3; 664 NW2d 767 (2003).

3

offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense." *Nutt,* 469 Mich at 574. The first two protections comprise the "successive prosecutions" strand of double jeopardy, *id.* at 575, while the third protection comprises the "multiple punishments" strand. *People v Smith,* 478 Mich 292, 299; 733 NW2d 351 (2007).

In *Nutt,* 469 Mich at 576, a case involving the "successive prosecutions" strand, this Court explained that "[a]pplication of the same-elements test, commonly known as the '*Blockburger* test,'[2] is the well-established method of defining the Fifth Amendment term 'same offence.'" This test "'focuses on the statutory elements of the offense.'" *Id.* (citation omitted). "'If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes.'" *Id.* (citation omitted). "In sum, offenses do not constitute the 'same offense' for purposes of the 'successive prosecutions' strand of double jeopardy if each offense requires proof of a fact that the other does not." *Smith,* 478 Mich at 304.

In *Smith,* 478 Mich at 316, this Court further explained that the "the ratifiers intended that the term 'same offense' be given the same meaning in the context of the 'multiple punishments' strand of double jeopardy that it has been

---

[2] *Blockburger v United States,* 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932).

4

given with respect to the 'successive prosecutions' strand." Therefore, multiple punishments are authorized if ""'each statute requires proof of an additional fact which the other does not . . . .'"" *Id.* at 307, quoting *Blockburger v United States,* 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932) (citation omitted).[3]

In *Wilder,* 411 Mich at 342, this Court held that convicting and sentencing a defendant for both first-degree felony murder and the predicate felony violates the "multiple punishments" strand of the Double Jeopardy Clause. However, *Wilder* did not apply *Blockburger*'s same-elements test. Instead, the Court held that "[w]here the proof adduced at trial indicates that one offense is a necessarily or cognate lesser included offense of the other, then conviction of both the offenses will be precluded." *Id.* at 343-344. The Court then concluded that because the predicate felony is a "necessary element of every prosecution for first-degree felony murder," convicting and sentencing a defendant for both the felony murder and the predicate felony will always violate the Double Jeopardy Clause. *Id.* at 345. The Court proceeded to explain that "the fact that the elements of first-degree felony murder do not in every instance require or include the elements of armed robbery [the predicate felony in *Wilder*] does not mean the offense of armed robbery is not necessarily included in the felony murder here." *Id.* at 345.

---

[3] However, if "the legislature expressed a clear intention that multiple punishments be imposed," ""'imposition of such sentences does not violate the Constitution,'" regardless of whether the offenses share the 'same elements.'" *Smith,* 478 Mich at 316, quoting *Missouri v Hunter,* 459 US 359, 368; 103 S Ct 673; 74 L Ed 2d 535 (1983) (citation and emphasis omitted).

5

"Though theoretically arguable, such a position is irrelevant when the legal analysis depends not upon the theoretical elements of the offense but upon proof of facts actually adduced." *Id.* at 345-346.

However, this approach, as *Wilder* itself recognized, is inconsistent with *Blockburger*:

> [T]he test concerning multiple punishment under our constitution has developed into a broader protective rule than that employed in the Federal courts. Under Federal authority, the Supreme Court established the "required evidence" test enunciated in *Blockburger v United States*, 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932). See also its original expression in *Morey v Commonwealth*, 108 Mass 433 (1871). In *Blockburger*, the Court outlined their test:

> "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 US [at] 304.

> This approach isolates the elements of the offense as opposed to the actual proof of facts adduced at trial. See *Harris v United States*, 359 US 19, 23; 79 S Ct 560; 3 L Ed 2d 597 (1959); *United States v Kramer*, 289 F2d 909, 913 (CA 2, 1961). Under this test, convictions of two criminal offenses arising from the same act are prohibited only when the greater offense necessarily includes all elements of the lesser offense. Accordingly, conviction of both offenses is precluded only where it is impossible to commit the greater offense without first having committed the lesser offense. From the perspective of lesser included offenses, the Supreme Court in cases concerning double jeopardy has thus adhered to the common-law definition of such offenses. See *People v Ora Jones*, [395 Mich 379,] 387[; 236 NW2d 461 (1975)].

> The Federal test in *Blockburger* can thus be distinguished from this Court's approach in two principal ways. First, we find the proper focus of double jeopardy inquiry in this area to be the proof of facts adduced at trial rather than the theoretical elements of the

offense alone. Proof of facts includes the elements of the offense as an object of proof. Yet, the actual evidence presented may also determine the propriety of finding a double jeopardy violation in any particular case. See *People v Martin*, [398 Mich 303,] 309[; 247 NW2d 303 (1976)]; *People v Stewart*, [400 Mich 540,] 548[; 256 NW2d 31 (1977)]; *People v Jankowski*, [408 Mich 79,] 91[; 289 NW2d 674 (1980)].

Second, we have held that double jeopardy claims under our constitution may prohibit multiple convictions involving cognate as well as necessarily included offenses. *People v Jankowski*, [408 Mich at] 91. [*Wilder,* 411 Mich at 348-349 n 10.][4]

Shortly after *Wilder* was decided, it was called into question by this Court's decision in *People v Robideau,* 419 Mich 458; 355 NW2d 592 (1984). Like the Court in *Wilder,* the Court in *Robideau* rejected the *Blockburger* test; however, it also rejected the *Wilder* test. In place of these tests, the *Robideau* Court, 419 Mich at 487, set forth "general principles" to be used to ascertain whether the

---

[4] We are perplexed by Justice Cavanagh's criticism that we "misappl[y] the *Blockburger* test," *post* at 3, while at the same time asserting that he would "retain *Wilder*'s approach of relying 'not upon the theoretical elements of the offense but upon proof of facts actually adduced' in determining whether multiple convictions are permitted under the Double Jeopardy Clause," *post* at 11, quoting *Wilder,* 411 Mich at 346. In *Wilder*, the Court *itself* acknowledged that its decision was inconsistent with *Blockburger* because *Blockburger* looked to the abstract legal elements of the offenses, rather than to the specific facts alleged in a particular case. *Wilder,* 411 Mich at 348-349 n 10.

We are similarly perplexed by Justice Kelly's contention that *Wilder* is consistent with federal authority, *post* at 4, 5, when *Wilder* itself stated that "the test concerning multiple punishment under our constitution has developed into a broader protective rule than that employed in the Federal courts." *Wilder,* 411 Mich at 348 n 10. Although *Wilder* stated, "The decision we reach in this case is fundamentally consistent with existing authority of the United States Supreme Court," it immediately proceeded to explain the differences between its decision and federal decisions, which differences go to the very heart of the question that is at issue here. *Wilder,* 411 Mich at 348-349.

7

Legislature intended to impose multiple punishments, such as "[w]here two statutes prohibit violations of the same social norm, albeit in a somewhat different manner, as a general principle it can be concluded that the Legislature did not intend multiple punishments." In addition, "[w]here one statute incorporates most of the elements of a base statute and then increases the penalty as compared to the base statute, it is evidence that the Legislature did not intend punishment under both statutes." *Id.*

*Robideau* criticized *Wilder* for "appl[ying] a method of analysis taken from successive-prosecution cases [to a "multiple punishments" case] . . . and look[ing] to the facts of the case." *Robideau,* 419 Mich at 482. The Court explained:

> [P]rior decisions of this Court [such as *Wilder*] have applied a factual test in single-trial multiple-punishment cases, creating areas in which arguably the Legislature cannot now act. To the extent that those decisions interpret the prohibition against double jeopardy as a substantive limitation on the Legislature, we now disavow them. [*Id.* at 485.]

Therefore, *Robideau* appeared to overrule *Wilder*.[5]

Even assuming that *Robideau* did not expressly overrule *Wilder,* it did so implicitly. *Robideau* concluded that the Double Jeopardy Clause does not prohibit

_____

[5] Justice Kelly states that *Robideau* "noted that *Wilder*'s analysis did not expressly turn on legislative intent" and then accuses us of "stretch[ing] this criticism to argue that *Robideau* impliedly overruled *Wilder*." *Post* at 9. However, as already discussed, and as any reader of *Robideau* can plainly see, this decision clearly said more about *Wilder* than Justice Kelly acknowledges. She further states that "*Robideau* emphasized that application of its principles to earlier double jeopardy decisions of this Court was unlikely to yield different results." *Post* at 9. However, *Robideau*'s principles led to a different result in that very case as compared to the result reached in *Wilder*. See n 6 *infra*.

8

multiple punishments for convictions and sentences of both first-degree criminal sexual conduct, MCL 750.520b(1)(c) (penetration under circumstances involving any "other felony"), and the underlying "other felony" used to prove the first-degree criminal sexual conduct. That is, *Rodideau* held that convicting and sentencing a defendant for both first-degree criminal sexual conduct and the predicate "other" felony does not violate the "multiple punishments" strand of the Double Jeopardy Clause. This conclusion is, of course, wholly at odds with *Wilder*'s conclusion that convicting and sentencing a defendant for both felony murder and the predicate felony violates the "multiple punishments" strand.[6] Therefore, *Robideau,* if not expressly, at least implicitly, overruled *Wilder*.[7]

This Court's recent decision in *Smith,* overruling *Robideau,* also called *Wilder* into question.[8] In *Smith,* 478 Mich at 318-319, we concluded that convicting and sentencing a defendant for both first-degree felony murder (where

---

[6] In light of this, we have no idea how Justice Kelly can argue that the result reached in *Wilder* is "consistent with the result dictated by *Robideau*." *Post* at 2, 10, 13, 14. In *Wilder,* the Court held that convicting and sentencing a defendant for both first-degree felony murder and the predicate felony violates double jeopardy. In *Robideau,* the Court held that convicting and sentencing a defendant for both first-degree criminal sexual conduct and the predicate felony does not violate double jeopardy. These decisions are not at all consistent and, contrary to Justice Kelly's contention, *post* at 13 n 41, the differences in sentences applicable to those offenses do not render these decisions consistent.

[7] It is noteworthy that Justice Cavanagh does not refer at all to *Robideau*. It has slipped down a memory hole.

[8] In her dissent, Justice Kelly restates a significant portion of her dissent in *Smith*. Rather than restating our response, we simply refer the reader to it. *Smith,* 478 Mich at 319-323.

9

the predicate felony was larceny) and the non-predicate felony of armed robbery does not violate the "multiple punishments" strand. We explained that *Robideau* was predicated on two propositions: "(1) Michigan's Double Jeopardy Clause afforded greater protections than the Double Jeopardy Clause of the United States Constitution, *Wilder,* [411 Mich] at 348 n 10; and (2) the *Blockburger* test did not account for Michigan's then-current recognition of 'cognate' lesser included offenses as 'lesser offenses' under a fact-driven analysis." *Smith,* 478 Mich at 314. *Wilder* was also based upon these propositions. However, as we explained in *Smith,* 478 Mich at 314-315:

> This conclusion that the Michigan Constitution affords greater protection than the Fifth Amendment has no basis in the language of Const 1963, art 1, § 15, the common understanding of that language by the ratifiers, or under Michigan caselaw as it existed at the time of ratification. Further, the concern expressed by the Court that *Blockburger* does not account for cognate lesser included offenses is no longer pertinent in light of *People v Cornell*, 466 Mich 335, 353; 646 NW2d 127 (2002).[13]
>
> _____
>
> [13] In *Cornell*, we held that an offense is an "offense inferior to that charged in the indictment" for purposes of MCL 768.32(1) when "'the lesser offense can be proved by the same facts that are used to establish the charged offense.'" *Cornell, supra* at 354 (citation omitted). In other words, an offense is the "same offense" for purposes of jury instructions if conviction of the greater offense necessarily requires conviction of the lesser offense.[9]
>
> _____

_____

[9] In *Cornell,* 466 Mich at 355, this Court held that MCL 768.32 "foreclose[s] consideration of cognate lesser offenses, which are only 'related' or of the same 'class or category' as the greater offense and may contain some elements not found in the greater offense," and *Wilder,* 411 Mich at 345, recognized that "the underlying felony might be characterized as a cognate lesser included offense, not a necessarily included offense."

In addition, as discussed earlier, both *Wilder* and *Robideau* rejected the *Blockburger* test for purposes of the "multiple punishments" strand.[10] However, in *Nutt,* 469 Mich at 591-592, this Court re-adopted the *Blockburger* test for purposes of the "successive prosecutions" strand of double jeopardy. And, in *Smith,* 478 Mich at 314-315, we concluded that there is no reason to apply a different test to the "multiple punishments" strand of double jeopardy:

> [N]othing in the language of the constitution indicates that the ratifiers intended to give the term "same offense" a different meaning in the context of the "multiple punishments" strand of double jeopardy than it has in the context of the "successive prosecutions" strand. In the absence of any evidence that the term "same offense" was intended by the ratifiers to include criminal offenses that do not share the same elements, we feel compelled to overrule *Robideau* and preceding decisions that are predicated on the same error of law, and to hold instead that *Blockburger* sets forth the appropriate test to determine whether multiple punishments are barred by Const 1963, art 1, § 15.[11]

Finally, *Wilder* was also based on the proposition that it is the facts of the case rather than the abstract legal elements that are determinative with regard to a

---

[10] Defendant concedes that *Blockburger*'s "same elements" test is applicable here.

[11] In *People v Harding,* 443 Mich 693, 712; 506 NW2d 482 (1993), this Court, using *Robideau*'s "general principles," concluded that convicting and sentencing a defendant for both first-degree felony murder and the predicate felony violates the "multiple punishments" strand. However, as noted, *Robideau* was expressly overruled in *Smith*. On the other hand, because *Smith* involved a conviction and sentence for first-degree felony murder and a non-predicate felony, *Smith* did not address "*Wilder*'s holding that the constitution bars multiple punishments for first-degree felony murder and the predicate felony"; however, it did note that "*Wilder*'s focus on the 'proof of facts adduced at trial[]' seems questionable in light of the distinction between cognate lesser offenses and lesser included offenses dictated by the Court in *Cornell*." *Smith,* 478 Mich at 318 n 16.

11

double-jeopardy challenge. However, as the Court in *Wilder,* 411 Mich at 349 n 10, acknowledged, the *Blockburger* test focuses on the abstract legal elements.[12] *Blockburger,* 284 US at 304 (concluding that there was no double-jeopardy violation because *"upon the face of the statute*, two distinct offenses are created") (emphasis added). That is, "'[i]n applying the *Blockburger* rule, the United States Supreme Court has focused on the legal elements of the respective offenses, not on the particular factual occurrence which gives rise to the charges.'" *Smith,* 478 Mich at 309, quoting *Wayne Co Prosecutor v Recorder's Court Judge,* 406 Mich 374, 395; 280 NW2d 793 (1979).[13]

---

[12] As discussed earlier, the Court in *Wilder,* 411 Mich at 349 n 10, explained:

> [The *Blockburger* test] isolates the elements of the offense as opposed to the actual proof of facts adduced at trial. Under this test, convictions of two criminal offenses arising from the same act are prohibited only when the greater offense necessarily includes all elements of the lesser offense. Accordingly, conviction of both offenses is precluded only where it is impossible to commit the greater offense without first having committed the lesser offense. [Citations omitted.]

[13] In *Wayne Co Prosecutor v Recorder's Court Judge,* 406 Mich at 397*,* this Court held that convicting and sentencing a defendant for both felony-firearm and the underlying felony does not violate the "multiple punishments" strand because "[i]t is possible, legally, to commit felony-firearm without committing second-degree murder." We explained, "[i]n applying the *Blockburger* rule, the United States Supreme Court has focused on the legal elements of the respective offenses, not on the particular factual occurrence which gives rise to the charges." *Id.* at 395. It is interesting that Justice Cavanagh does not even mention *Wayne Co Prosecutor v Recorder's Court Judge.* As with *Robideau*, see note 7, this case has also fallen down a memory hole.

In *Iannelli v United States*, 420 US 770, 785 n 17; 95 S Ct 1284; 43 L Ed 2d 616 (1975), the Court held that "the [*Blockburger*] test focuses on the statutory elements of the offense." However, in *Harris v Oklahoma,* 433 US 682; 97 S Ct 2912; 53 L Ed 2d 1054 (1977), a "terse per curiam," *United States v Dixon,* 509 US 688, 698; 113 S Ct 2849; 125 L Ed 2d 556 (1993), that did not even mention *Blockburger,* the Court held that a subsequent prosecution for robbery with a firearm was barred by the "successive prosecutions" strand because the defendant had already been convicted of felony murder based on the robbery with a firearm. Subsequently, in *Whalen v United States,* 445 US 684, 694; 100 S Ct 1432; 63 L Ed 2d 715 (1980), expanding on *Harris,* the Court held that convicting and sentencing a defendant for both first-degree felony murder and rape, where the rape was the predicate felony, violated the "multiple punishments" strand because "proof of rape is a necessary element of proof of the felony murder." In *Albernaz v United States*, 450 US 333, 338; 101 S Ct 1137; 67 L Ed 2d 275 (1981), quoting *Iannelli,* 420 US at 785 n 17, the Court again held that "'the [*Blockburger*] test focuses on the statutory elements of the offense.'" However*,* in *Grady v Corbin,* 495 US 508, 520; 110 S Ct 2084; 109 L Ed 2d 548 (1990), the Court, relying on *Harris* for the proposition that "a strict application of the *Blockburger* test is not the exclusive means of determining whether a subsequent prosecution violates the Double Jeopardy Clause" because *Blockburger* only requires "a technical comparison of the elements of the two offenses," expressly adopted the "same conduct" test that was used in *Harris* and *Whalen--* a test that is directly at odds

13

with the notion that the focus is on the statutory elements.[14] However, the "same conduct" test was explicitly abandoned in *Dixon,* 509 US at 704. Therefore, the *Blockburger* test once again is the controlling test for addressing double-jeopardy challenges, and "'the [*Blockburger*] test focuses on the statutory elements of the offense.'" *Albernaz,* 450 US at 338, quoting *Iannelli,* 420 US at 785 n 17. See *Robideau,* 419 Mich at 475-478, which rejected *Harris* and *Whalen* even before *Dixon* was decided, relying on *Albernaz.*[15]

---

[14] Justice Cavanagh indicates that *Whalen* must not have been using the "same conduct" test because it did not specifically refer to the "same conduct" test. *Post* at 6-7. We disagree. The fact that a court does not specifically proclaim its utilization of a particular test does not mean that it was not, in fact, employing that test. Even a perfunctory review of the Court's decision in *Whalen* indicates that it was using the "same conduct" test, as evinced by the fact that the Court focused on the defendant's *conduct* in that particular case, rather than the abstract legal *elements* of the offenses at issue.

[15] Although Justice Cavanagh is correct that "none of the United States Supreme Court cases cited by the majority for the proposition that *Blockburger* compels a comparison of abstract statutory elements involves a compound offense such as Michigan's felony-murder statute," *post* at 4 (emphasis omitted), we do cite two Michigan Supreme Court cases for this proposition that *do* involve a compound offense. In *Wayne Co Prosecutor v Recorder's Court Judge,* 406 Mich at 397*,* this Court, as discussed earlier, held that convicting and sentencing a defendant for both felony-firearm and the underlying felony does not violate the "multiple punishments" strand because "[i]t is possible, legally, to commit felony-firearm without committing second-degree murder." In addition, as also discussed above, this Court in *Robideau*, 419 Mich at 466, concluded that the Double Jeopardy Clause does not prohibit multiple punishments for convictions and sentences of both first-degree criminal sexual conduct, MCL 750.520b(1)(c) (penetration under circumstances involving any "other felony"), and the underlying "other felony" used to prove the first-degree criminal sexual conduct.

Justice Cavanagh relies on three decisions to support his conclusion that *Whalen* remains controlling authority. However, only one of these decisions
(. . . continued)

14

Further, we must not lose sight of the fact that the *Blockburger* test is a tool to be used to ascertain legislative intent. *Missouri v Hunter,* 459 US 359, 368; 103 S Ct 673; 74 L Ed 2d 535 (1983). Because the statutory elements, not the particular facts of the case, are indicative of legislative intent, the focus must be on these statutory elements.[16]

---

(continued . . .)
involved a compound offense such as Michigan's felony-murder statute. *Rutledge v United States,* 517 US 292; 116 S Ct 1241; 134 L Ed 2d 419 (1996), involved a lesser included offense and *Whalen* was merely cited for the proposition that convicting a defendant of both the greater offense and the lesser included offense violates double jeopardy. In *United States v Stafford,* 831 F2d 1479, 1483-1484 (CA 9, 1987), the court held that convicting the defendant of violating a statute that required proof of an "overt act in furtherance of the underlying unlawful activity" and the underlying unlawful activity did not violate double jeopardy because committing an overt act in furtherance of a crime is not the "same" as actually committing the crime. Finally, although *United States v Chalan,* 812 F2d 1302 (CA 10, 1987), did involve a compound offense, it was decided before *Dixon,* which expressly overruled the "same conduct" test that *Whalen* used, and it did not discuss whether only the abstract legal elements or the particular facts of the case should be considered.

[16] Contrary to Justice Cavanagh's assertion, *post* at 3, 11, 14, we certainly do recognize that the *Blockburger* test is a tool to be used to ascertain legislative intent and that it is not the exclusive tool for doing this. As this Court explained in *Smith,* 478 Mich at 316:

> In interpreting "same offense" in the context of multiple punishments, federal courts first look to determine whether the legislature expressed a clear intention that multiple punishments be imposed. Where the Legislature does clearly intend to impose such multiple punishments, "'imposition of such sentences does not violate the Constitution,'" regardless of whether the offenses share the "same elements." Where the Legislature has not clearly expressed its intention to authorize multiple punishments, federal courts apply the "same elements" test of *Blockburger* to determine whether multiple punishments are permitted. [Citations omitted; see also n 3 of this opinion.]

(. . . continued)

Moreover, as we explained in *Nutt,* 469 Mich at 590, in adopting Const 1963, art 1, § 15, the ratifiers of our constitution intended our double-jeopardy provision to be construed consistently with the interpretation given to the Fifth Amendment by federal courts at the time of ratification. And, at the time of the ratification, federal courts had adopted the abstract legal elements test of *Blockburger. Blockburger,* 284 US at 304 (concluding that there was no double-jeopardy violation because *"upon the face of the statute*, two distinct offenses are created") (emphasis added); *Harris v United States,* 359 US 19, 23; 79 S Ct 560; 3

---

(continued . . .)

The dissenting justices, on the other hand, would turn our (and the United States Supreme Court's) double-jeopardy jurisprudence on its head by effectively holding that multiple punishments can only be imposed if the Legislature has expressly stated that multiple punishments for specific offenses are permitted. However, neither this Court nor the United States Supreme Court has ever adopted such a rule, and we will not do so here today. Instead, we continue to view the fact that the Legislature has authorized the punishment of two offenses that are not the "same offense," i.e., each offense includes an element that the other does not, as a relatively clear legislative intent to allow multiple punishments. Although Justice Cavanagh states that he would not require "an explicit reference to multiple punishments and consecutive sentencing," *post* at 13, we are at a loss as to how else the Legislature could sufficiently indicate to his satisfaction that multiple punishments are permitted given his conclusion that "[i]n the absence of clear legislative intent to the contrary, I would conclude that the Legislature did not intend to impose punishments for felony murder and its necessarily required predicate felony." *Post* at 14. Likewise, although Justice Kelly states that she "do[es] not suggest that the only way to discern whether the Legislature intended to permit multiple punishments is to find explicit language in the statute," *post* at 13 n 41, she repeatedly states that "the felony-murder statute contains no language indicating an intent to permit multiple punishments" and that "[n]o conclusive evidence can be discerned that the Legislature intended to permit convictions for both felony murder and the predicate felony." *Post* at 10, 12, 14. What short of an explicit reference would suffice under the standards of the dissenting justices?

16

L Ed 2d 597 (concluding that there was no double-jeopardy violation because "the violation, as distinguished from the direct evidence offered to prove that violation, was distinctly different under each of the respective statutes") (emphasis omitted).

Finally, we note that a majority of the states focus on the abstract legal elements. Hoffheimer, *The rise and fall of lesser included offenses,* 36 Rutgers L J 351, 413-414 (2005); see, e.g., *Montana v Close,* 191 Mont 229, 247; 623 P2d 940 (1981) (holding that convicting and sentencing a defendant for both first-degree felony murder and the predicate felony does not violate the "multiple punishments" strand).

For these reasons, we conclude that convicting and sentencing a defendant for both first-degree felony murder and the predicate felony does not violate the "multiple punishments" strand of the Double Jeopardy Clause if each offense has an element that the other does not.

In deciding whether to overrule precedent, we consider "(a) whether the earlier decision was wrongly decided, and (b) whether overruling such decision would work an undue hardship because of reliance interests or expectations that have arisen." *Robertson v DaimlerChrysler Corp*, 465 Mich 732, 757; 641 NW2d 567 (2002). With regard to the first inquiry, we believe, as we have already discussed, that *Wilder* was wrongly decided because it is inconsistent with the common understanding of "same offense." With regard to the second inquiry, we must examine "whether the previous decision has become so embedded, so accepted, so fundamental, to everyone's expectations that to change it would

17

produce not just readjustments, but practical real-world dislocations." *Robinson v Detroit*, 462 Mich 439, 466; 613 NW2d 307 (2000). "[T]o have reliance[,] the knowledge must be of the sort that causes a person or entity to attempt to conform his conduct to a certain norm before the triggering event." *Id.* at 467. Overruling *Wilder* will disrupt no reliance interests because no person could conceivably have relied on that decision to his or her detriment. That is, we cannot conceive that anyone has committed a first-degree felony murder on the basis that, under *Wilder,* he or she could only be punished for the first-degree felony murder and not also the predicate felony. Finally, failing to overrule *Wilder* would produce inconsistent rules regarding the meaning of the language "same offense" in Const 1963, art 1, § 15. For these reasons, assuming that there is still life left in *Wilder,* we expressly overrule *Wilder*.

In the instant case, defendant was convicted of both first-degree felony murder and first-degree criminal sexual conduct, where the latter constituted the predicate felony for the felony-murder conviction. The killing of a human being is one of the elements of first-degree felony murder. MCL 750.316(1)(b); *People v Carines,* 460 Mich 750, 758-759; 597 NW2d 130 (1999) (citation omitted). Sexual penetration is one of the elements of first-degree criminal sexual conduct. MCL 750.520b(1). First-degree felony murder contains an element not included in first-degree criminal sexual conduct, namely, the killing of a human being. Similarly, first-degree criminal sexual conduct contains an element not necessarily included in first-degree felony murder, namely, a sexual penetration. First-degree

felony murder does not necessarily require proof of a sexual penetration because first-degree felony murder can be committed without also committing first-degree criminal sexual conduct. First-degree felony murder is the killing of a human being with malice "'while committing, attempting to commit, or assisting in the commission of *any* of the felonies specifically enumerated in [MCL 750.316(1)(b)].'" *Carines,* 460 Mich at 758-759 (emphasis added; citation omitted). Therefore, unlike first-degree criminal sexual conduct, first-degree felony murder does not necessarily require proof of a sexual penetration. That is, "[i]t is []possible to commit the greater offense [first-degree felony murder] without first committing the lesser offense [first-degree criminal sexual conduct]." *Cornell,* 466 Mich at 361. Because first-degree felony murder and first-degree criminal sexual conduct each contains an element that the other does not, we conclude that that these offenses are not the "same offenses" under either the Fifth Amendment or Const 1963, art 1, § 15, and, therefore, defendant may be punished separately for each offense.

## IV. CONCLUSION

We conclude that convicting and sentencing a defendant for both first-degree felony murder and the predicate felony does not necessarily violate the "multiple punishments" strand of the Double Jeopardy Clause, and, thus, we overrule *Wilder.* Because each of the offenses for which defendant was convicted, felony murder and first-degree criminal sexual conduct, contains an element that the other does not, they are not the "same offense" and, therefore, defendant may

19

be punished for both. Accordingly, we reverse the part of the Court of Appeals judgment that vacated defendant's first-degree criminal sexual conduct conviction and sentence, and we reinstate defendant's first-degree criminal sexual conduct conviction and sentence. In addition, defendant's application for leave to appeal the judgment of the Court of Appeals is considered and it is denied, because we are not persuaded that the questions presented should be reviewed by this Court.

Stephen J. Markman
Clifford W. Taylor
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellant,

v                                                            No. 134913

DAVID GORDON REAM,

   Defendant-Appellee.

_____

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v                                                            No. 134925

DAVID GORDON REAM,

   Defendant-Appellant.

_____

CAVANAGH, J. (*dissenting*).

   Today, the majority overrules longstanding precedent and replaces it with a holding that will fail to preserve the constitutional protection against double jeopardy. The majority misapplies the test enunciated by *Blockburger v United States*, 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932), and, in doing so, unconstitutionally subjects defendant to multiple punishment for the same offense. Thus, I respectfully dissent.

The Double Jeopardy Clause of the Michigan and United States constitutions protects against both successive prosecutions and multiple punishments for the "same offense."[1] This case concerns the prohibition against imposing multiple punishments for the same offense. The United States Supreme Court has stated that in the multiple-punishment context, the interest that the Double Jeopardy Clause seeks to protect is "'limited to ensuring that the total punishment did not exceed that authorized by the legislature.'" *Jones v Thomas*, 491 US 376, 381; 109 S Ct 2522; 105 L Ed 2d 322 (1989), quoting *United States v Halper*, 490 US 435, 450; 109 S Ct 1892; 104 L Ed 2d 487 (1989). Thus, the controlling matter is legislative intent, because it determines whether multiple convictions impermissibly involve the same offense for purposes of the protection against multiple punishment. *Whalen v United States*, 445 US 684, 688-689; 100 S Ct 1432; 63 L Ed 2d 715 (1980).[2] The Supreme Court has described the *Blockburger* test as a "rule of statutory construction to help determine legislative intent." *Garrett v United States*, 471 US 773, 778-779; 105 S Ct 2407; 85 L Ed 2d 764 (1985). In *Blockburger*, the Court held that "[t]he applicable rule is that,

---

[1] Const 1963, art 1, § 15; US Const, Ams V and XIV. See also *United States v Wilson*, 420 US 332, 343; 95 S Ct 1013; 43 L Ed 2d 232 (1975), quoting *North Carolina v Pearce*, 395 US 711, 717; 89 S Ct 2072; 23 L Ed 2d 656 (1969).

[2] However, although the constitution grants the legislative branch exclusive authority to define criminal offenses and to prescribe the punishments to be imposed upon those found guilty of them, "[t]his is not to say that there are not constitutional limitations upon this power." *Whalen*, *supra* at 689 n 3.

where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger*, *supra* at 304.

This Court adopted *Blockburger*'s "same elements" test to determine whether multiple convictions would violate Michigan's Double Jeopardy Clause in *People v Smith*, 478 Mich 292, 296; 733 NW2d 351 (2007). I dissented in *Smith*, because I believed that the use of the *Blockburger* test alone is not always sufficient to safeguard the double-jeopardy protections of the United States and Michigan constitutions. I continue to oppose this Court's exclusive use of *Blockburger* to discern legislative intent, particularly in compound-offense cases. This case illustrates the error of the majority's treatment of *Blockburger*. The majority misapplies the *Blockburger* test by comparing the abstract elements of a compound offense to one of its predicate offenses, rather than comparing the actual elements that were established at trial and that actually comprise the defendant's convictions. In addition, the majority errs by accepting the result reached by its application of the *Blockburger* test without considering the fundamental matter of legislative intent.

The majority applies *Blockburger* to this case by comparing the abstract, statutory elements of felony murder with those of first-degree criminal sexual

3

conduct (CSC-I).[3]  MCL 750.316(1)(b); MCL 750.520b(1).  It observes that CSC-I contains the element of sexual penetration, while felony murder can be based on a different predicate offense that does not necessarily require proof of a sexual penetration.  *Ante* at 19.  The result of the majority's approach is that the compound offense of felony murder and the predicate offense of CSC-I are deemed not to be the "same offense" because they each contain an element that the other does not.  In support of this method, the majority eagerly cites authority that stands for the proposition that the *Blockburger* test operates by comparing the abstract legal elements of the respective offenses under consideration, not the actual proof of facts adduced at trial.  *Ante* at 12-14.

Significantly, *none* of the United States Supreme Court cases cited by the majority for the proposition that *Blockburger* compels a comparison of abstract statutory elements involves a compound offense such as Michigan's felony-murder statute.[4]  *Id.*  The Supreme Court did not address *Blockburger*'s

---

[3] The felony-murder statute lists several offenses that may serve as predicate offenses to felony murder, such as arson, CSC-I, robbery, kidnapping, and child abuse, among many others; they constitute the abstract, statutory elements of felony murder.  However, the predicate offenses are listed in the alternative, so proof of *all* the possible predicate felonies listed as elements in felony murder's statutory definition is not required to secure a conviction for felony murder.

[4] *Iannelli v United States*, 420 US 770; 95 S Ct 1284; 43 L Ed 2d 616 (1975), involved convictions for conspiring to violate and violating a federal gambling statute.  *Iannelli* did not rely on *Blockburger* to reach its conclusion, but rather, was convinced by "the history and structure of the Organized Crime (. . . continued)

4

application to compound offenses until *Whalen*, which presented the opportunity to consider whether convictions for rape and for the killing of the same victim in the perpetration of rape could be sustained under the Double Jeopardy Clause. *Whalen*, *supra* at 685-686. The felony-murder statute at issue required proof of a killing and of the commission or attempted commission of one of six specified felonies, in the course of which the killing occurred.[5] *Id*. at 686. Rape was one of the specified felonies; it was also punishable separately under its own statutory provision. *Id*.

The Court relied on legislative history to determine that Congress intended the federal courts to apply the *Blockburger* test when construing the criminal provisions of the District of Columbia Code; thus, the Court applied the *Blockburger* test to the felony-murder and rape statutes. *Id*. at 692-693. Notably,

---

(continued . . .)
Control Act of 1970," which "manifest[ed] a clear and unmistakable legislative judgment" to treat conspiracy to violate the act and the consummated crime as separate offenses. *Id*. at 791.

*Albernaz v United States*, 450 US 333, 101 S Ct 1137, 67 L Ed 2d 275 (1981), concerned convictions for conspiracy to import marijuana and conspiracy to distribute marijuana. The issue was whether consecutive sentences could be imposed under those two provisions when the convictions arose from participation in a single conspiracy with multiple objectives. *Id*. at 336-337.

*Blockburger* considered whether a defendant could be convicted under two different statutes for a single criminal act—in particular, where a single sale of drugs violated a provision that prohibited selling the drug other than in its original packaging, as well as a provision that prohibited selling the drug not in pursuance of a written order of the purchaser. *Blockburger, supra* at 301.

[5] The provisions at issue were part of the District of Columbia Code.

5

the Court did not focus on the abstract statutory elements of these offenses, but, rather, compared the elements that were necessary to prove felony murder with those of the predicate felony. *Id*. at 694. It observed that "[a] conviction for killing in the course of a rape cannot be had without proving all the elements of the offense of rape." *Id*. at 693-694. Thus, "Congress did not authorize consecutive sentences for rape and for a killing committed in the course of the rape, since it is plainly not the case that 'each provision requires proof of a fact which the other does not.'" *Id*. at 693.

Moreover, the Court specifically rejected the argument that felony murder and rape were not the "same" offense under *Blockburger* simply because felony murder does not *always* require proof of a rape, but can be based on one of the other enumerated felonies. *Id*. at 694. The Court stated:

> In the present case . . . proof of rape is a necessary element of proof of the felony murder, and we are unpersuaded that this case should be treated differently from other cases in which one criminal offense requires proof of every element of another offense. There would be no question in this regard if Congress, instead of listing the six lesser included offenses in the alternative, had separately proscribed the six different species of felony murder under six statutory provisions. It is doubtful that Congress could have imagined that so formal a difference in drafting had any practical significance, and we ascribe none to it. [*Id*.]

In short, the Court unequivocally held that double-jeopardy analysis for compound offenses relies not on the abstract statutory elements of the offenses, but on the elements that actually comprise the convictions under consideration. Significantly, *Whalen* appeared to view its holding as consistent with *Blockburger*;

6

it never indicated that it was departing from *Blockburger* or that it was using a "same conduct" test, as the majority suggests. *Ante* at 13-14. *Whalen* simply recognizes that in applying the *Blockburger* test to compound offenses, it is essential to consider the elements of the actual predicate offense involved, rather than merely to compare the abstract elements of the offenses—an approach that would overlook the actual relationship between the convictions. Given that this Court has adopted the *Blockburger* test, *Whalen*'s approach to applying the *Blockburger* test to compound offenses should guide this Court's application.

However, the majority implies that *Whalen* is no longer relevant authority. *Ante* at 14. To support its theory, the majority equates *Whalen*'s application of *Blockburger* with the "same conduct" test that was adopted by *Grady v Corbin*, 495 US 508; 110 S Ct 2084; 109 L Ed 2d 548 (1990), which was overruled by *United States v Dixon*, 509 US 688; 113 S Ct 2849; 125 L Ed 2d 556 (1993).[6] But *Whalen*'s approach and the *Grady* "same conduct" test are meaningfully distinct; thus, it is erroneous to conclude that the overruling of *Grady* extends to *Whalen* as well. To begin with, *Grady* developed the "same conduct" test as a special accommodation for successive-prosecution cases *only,* while *Whalen* was a multiple-punishment case. *Grady*, *supra* at 520-521. Moreover, *Grady* indicated

---

[6] *Grady* describes the "same conduct" test as barring "any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Grady*, *supra* at 521.

that the "same conduct" test was an additional inquiry to be made after the *Blockburger* test was applied, while *Whalen* simply described how to apply the *Blockburger* test to compound-offense cases. *Id*. at 521. Finally, unlike *Grady*, *Whalen* remained focused on the elements of the offenses, not the broader consideration of the conduct constituting the offenses. It is also noteworthy that when *Dixon* overruled *Grady*, it dismissed the notion that *Harris v Oklahoma*, 433 US 682; 97 S Ct 2912; 53 L Ed 2d 1054 (1977), had been an antecedent to *Grady*. *Dixon*, *supra* at 706. *Harris* mirrored *Whalen*'s conclusion in the context of a successive-prosecution case, and the majority has asserted that *Harris* and *Whalen* both used the *Grady* "same conduct" test. But *Dixon* itself rejected the suggestion that *Harris* applied the "same conduct" test: "*Harris* never uses the word 'conduct,' and its entire discussion focuses on the *elements* of the two offenses. See, *e.g*., 433 U.S. at 682-683, (to prove felony murder, 'it was necessary for all the ingredients of the underlying felony' to be proved.)" *Id*.

In sum, *Dixon* did not overrule *Whalen*, and none of the cases cited by the majority even hints that *Whalen*'s approach is inconsistent with the *Blockburger* test or with prevailing law. In fact, since *Whalen* was decided, a number of cases have followed or cited its rule.[7] The majority suggests that two arguably relevant Michigan cases I have not addressed in my dissent have fallen "down a memory

---

[7] See, e.g., *Rutledge v United States*, 517 US 292, 297 n 6; 116 S Ct 1241; 134 L Ed 2d 419 (1996); *United States v Stafford*, 831 F2d 1479, 1482 (CA 9, 1987); *United States v Chalan*, 812 F2d 1302, 1316-1317 (CA 10, 1987).

8

hole," *ante* at 9 n 7; 12 n 13, but meanwhile, the majority engages in the truly Orwellian tactic of arguing that *Whalen* has been overruled and is not to be followed, though in fact it remains valid United States Supreme Court precedent.

The statutory provisions discussed in *Whalen* are similar to the provisions under consideration in this case, and I find *Whalen*'s reasoning applicable here. Defendant was convicted of felony murder under MCL 750.316(1)(b), which provides:

> A person who commits any of the following is guilty of first degree murder and shall be punished by imprisonment for life:
>
> * * *
>
> (b) Murder committed in the perpetration of, or attempt to perpetrate, arson, *criminal sexual conduct in the first, second, or third degree*, child abuse in the first degree, a major controlled substance offense, robbery, carjacking, breaking and entering of a dwelling, home invasion in the first or second degree, larceny of any kind, extortion, kidnapping, vulnerable adult abuse in the first and second degree under section 145n, torture under section 85, or aggravated stalking under section 411i. [Emphasis added.]

Defendant was also convicted of CSC-I, MCL 750.520b(1):

> A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists . . . .[8]

---

[8] The requisite circumstances are enumerated in MCL 750.520b(1)(a)-(h); in this case, the jury was required to find that defendant was armed at the time with a weapon or with any other object used or fashioned in a manner to lead the victim to reasonably believe it to be a weapon. See MCL 750.520b(1)(e).

Like the District of Columbia felony-murder statute examined in *Whalen*, the Michigan felony-murder statute lists several offenses that may serve as the predicate offense for felony murder. The predicate offenses are listed in the alternative, so a conviction for felony murder does not *always* require proof of CSC-I. But even though defendant was convicted under a statute listing a number of other possible predicate felonies, his conviction did not require proof of the elements of *all* of the possible predicate felonies; it only required proof of the elements of CSC-I. The information charging defendant and the jury instructions from his trial specify that the felony-murder charge was based on CSC-I. In other words, in defendant's case, proof of all the elements of CSC-I was a necessary element of the felony-murder conviction. But applying the *Blockburger* test as the majority suggests—by comparing only the abstract statutory elements—will not reflect the reality that proof of CSC-I was necessarily included in defendant's felony-murder conviction. When the abstract elements of a statute differ from the actual elements that can sustain a conviction under that statute, basing a comparison on the abstract statutory elements will not adequately protect against double jeopardy.

This Court recognized this shortcoming in *People v Wilder*, 411 Mich 328; 308 NW2d 112 (1981), and reached a conclusion that was consistent with *Whalen*. In *Wilder*, this Court held that conviction of both felony murder and the underlying felony of armed robbery violates the Double Jeopardy Clause of the Michigan Constitution. *Id*. at 352. We observed that "the fact that the elements of

10

first-degree felony murder do not in every instance require or include the elements of armed robbery does not mean the offense of armed robbery is not necessarily included in the felony murder here." *Id*. at 345. For double-jeopardy analysis, "'the question is not whether the challenged lesser offense is by definition necessarily included within the greater offense also charged, but whether, on the facts of the case at issue, it is.'" *Id*. at 346, quoting *People v Jankowski*, 408 Mich 79, 91; 289 NW2d 674 (1980). I would retain *Wilder*'s approach of relying "not upon the theoretical elements of the offense but upon proof of facts actually adduced" in determining whether multiple convictions are permitted under the Double Jeopardy Clause. *Id*. at 346. Thus, using the approach presented by *Wilder* and *Whalen*, the *Blockburger* test would indicate that convictions for both felony murder and the underlying CSC-I offense are not permissible because CSC-I contains no elements that are not also required for a felony-murder conviction.

Regardless of the method employed for comparing offenses for double-jeopardy purposes, legislative intent remains the determinative factor. The majority compounds its erroneous application of *Blockburger* by accepting its flawed result without considering the fundamental matter of legislative intent. After concluding that felony murder and CSC-I are not the same offense according to its construction of the *Blockburger* test, the majority fails to consider whether this result resonates with discernable legislative intent. *Ante* at 15.

The United States Supreme Court has rejected the "application of *Blockburger* rule as a conclusive determinant of legislative intent, rather than as a

11

useful canon of statutory construction . . . ." *Garrett, supra* at 779. Moreover, the *Blockburger* rule is not controlling when the legislative intent is clear from the face of the statute or the legislative history; otherwise, the factual inquiry with regard to legislative intent would be transformed into a conclusive presumption of law. *Id*. In sum, the Court does not rely solely on *Blockburger* in determining whether multiple punishments are constitutionally prohibited; rather, the result of the *Blockburger* test is considered along with indications of legislative intent.

This procedure applies whether the outcome of the *Blockburger* test indicates that the offenses under consideration are the "same offense" or not. For example, in *Whalen*, the Court applied the *Blockburger* test and held that the two statutes in controversy proscribed the "same" offense. *Whalen*, *supra* at 694. Yet, the Court did not conclude its inquiry there; instead, it held that "where two statutory provisions proscribe the 'same offense,' they are construed not to authorize cumulative punishments in the absence of a clear indication of contrary legislative intent." *Id*. at 692. The Court observed no clear appearance of congressional intent to impose cumulative punishments for the two offenses, so it held that cumulative punishments were not permitted. *Id*. at 695. Conversely, applying the *Blockburger* test in *Albernaz* resulted in the opposite conclusion from *Whalen*. There, the Court concluded that the two statutes at issue did not proscribe the same offense under the *Blockburger* test because each provision required proof of a fact that the other did not. *Albernaz*, *supra* at 339. If the *Blockburger* test

12

served as the exclusive means for determining legislative intent, the Court's inquiry would have ended there. But instead, the Court elaborated:

> The *Blockburger* test is a "rule of statutory construction," and because it serves as a means of discerning congressional purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent. Nothing, however, in the legislative history which has been brought to our attention discloses an intent contrary to the presumption which should be accorded to these statutes after application of the *Blockburger* test. [*Id*. at 340.]

The Court deduced that because the results of the *Blockburger* test were confirmed by the absence of evidence of legislative intent to the contrary, cumulative punishments of those particular offenses were permissible. *Id*. at 343-344.

Similar to the conclusion reached by *Whalen* Court, I see no evidence of legislative intent to impose multiple punishments for violations of Michigan's felony-murder statute and the underlying felony. The felony-murder statute does not indicate that punishment for that offense should be imposed in addition to punishment for the underlying felony. By contrast, the felony-firearm statute, MCL 750.227b(2), provides:

> A term of imprisonment prescribed by this section is in addition to the sentence imposed for the conviction of the felony or the attempt to commit the felony, and shall be served consecutively with and preceding any term of imprisonment imposed for the conviction of the felony or attempt to commit the felony.

While an explicit reference to multiple punishments and consecutive sentencing is not the only way the Legislature could evince its intent to impose multiple punishment, the felony-firearm statute provides an example of a clear indication of

13

legislative intent to impose multiple punishments.[9] In the case of the felony-murder statute, there is no such indication. In the absence of clear legislative intent to the contrary, I would conclude that the Legislature did not intend to impose punishments for felony murder and its necessarily required predicate felony.

In conclusion, I disagree with the majority's application of *Blockburger*, which fails to account for the unique properties of compound and predicate offenses. I also dissent from the use of the *Blockburger* test as an exclusive means of discerning legislative intent for double-jeopardy purposes. I would retain *Wilder*'s holding that multiple convictions for felony murder and the underlying felony violate the Double Jeopardy Clause of the Michigan Constitution, and, accordingly, would affirm the Court of Appeals.

Michael F. Cavanagh

---

[9] The majority mischaracterizes my statement by stating that I effectively conclude "that multiple punishments can only be imposed if the Legislature has expressly stated that multiple punishments for specific offenses are permitted." *Ante* at 16 n 16. In fact, I have plainly stated to the contrary.

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

     Plaintiff-Appellant,

v                                         No. 134913

DAVID GORDON REAM,

     Defendant-Appellee.

_____

PEOPLE OF THE STATE OF MICHIGAN,

     Plaintiff-Appellee,

v                                         No. 134925

DAVID GORDON REAM,

     Defendant-Appellant.

_____

KELLY, J. (*dissenting*).

With this case, the majority continues its unprecedented crusade to dismantle Michigan's historic double jeopardy jurisprudence.[1]  I dissent.

---

[1] See *People v Smith*, 478 Mich 292, 336-340; 733 NW2d 351 (2007) (Kelly, J., dissenting).  As I explained in *Smith*, "there are few areas of the law in which the current Michigan Supreme Court majority has altered state law more than double jeopardy jurisprudence." *Id*. at 336.  The justices who constitute the majority in this case are the justices who chipped away at the protections afforded by the Double Jeopardy Clause of the Michigan Constitution in *Smith*, *supra* at

(. . . continued)

I agree with Justice Cavanagh that the majority misapplies *Blockburger v United States*[2] in this case by failing to account for the unique properties of compound offenses. I write separately because I continue to adhere to the principles set forth in my dissent in *People v Smith*.[3] As I explained in *Smith*, *People v Robideau*[4] provided the appropriate protection against multiple punishments in Michigan. *People v Wilder*[5] held that multiple convictions for felony murder and the predicate felony violate the Double Jeopardy Clause of the Michigan Constitution.[6] That holding is consistent with the result dictated by *Robideau*. Accordingly, I would retain *Wilder's* holding. I would affirm the judgment of the Court of Appeals vacating defendant's first-degree criminal sexual conduct conviction.

---

(continued . . .)
324; *People v Davis*, 472 Mich 156, 169; 695 NW2d 45 (2005); and *People v Nutt*, 469 Mich 565, 596; 677 NW2d 1 (2004).

[2] *Blockburger v United States*, 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932).

[3] *Smith*, *supra* at 331-347 (Kelly, J., dissenting).

[4] *People v Robideau*, 419 Mich 458; 355 NW2d 592 (1984), overruled by *Smith*, *supra* at 315.

[5] *People v Wilder*, 411 Mich 328; 308 NW2d 112 (1981).

[6] Const 1963, art 1, § 15.

The Double Jeopardy Clause of the Michigan Constitution provides that "No person shall be subject for the same offense to be twice put in jeopardy."[7] The Double Jeopardy Clause of the United States Constitution similarly provides that "No person shall be . . . subject for the same offence to be twice put in jeopardy of life or limb . . . ."[8] The federal Double Jeopardy Clause is applicable to actions by the states.[9]

As I stated in *Smith*: "The Double Jeopardy Clause primarily offers three protections: it protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense."[10]

This case concerns the third double jeopardy protection: protection from multiple punishments for the same offense. The multiple-punishments strand of double jeopardy jurisprudence protects a defendant from the imposition of greater punishment than the Legislature intended.[11] Accordingly, the question whether a

---

[7] *Id.*

[8] US Const, Am V.

[9] *Benton v Maryland*, 395 US 784, 795-796; 89 S Ct 2056; 23 L Ed 2d 707 (1969).

[10] *Smith*, *supra* at 335 (Kelly, J., dissenting).

[11] *Robideau*, *supra* at 485.

3

particular punishment is an impermissible "multiple" punishment can be determined only by ascertaining legislative intent.[12]

### THIS COURT'S DECISION IN *PEOPLE V WILDER*

In *Wilder*, this Court addressed whether the defendant's right not to be subjected to multiple punishments for the same offense was violated. Defendant had been convicted and sentenced for both first-degree felony murder and the predicate felony of armed robbery.[13] As a matter of state constitutional law, *Wilder* held that the conviction for the predicate felony and felony murder violated the prohibition against double jeopardy.[14] In so holding, *Wilder* focused on the facts necessary for conviction.[15] The Court reasoned that the predicate felony was a lesser included offense of first-degree felony murder because first-degree felony murder could not have been committed without necessarily committing the predicate felony.[16] The *Wilder* Court observed that its decision was "fundamentally" consistent with federal authority.[17]

---

[12] *Id*. at 469.

[13] *Wilder*, *supra* at 336.

[14] *Id*. at 347.

[15] *Id.* at 343-346.

[16] *Id*. at 364.

[17] *Id*. at 348-352.

4

The *Blockburger* "same elements" test[18] adopted by the majority is only one means of ascertaining legislative intent.[19] As a rule of statutory construction, the same-elements test is not controlling "where, for example, there is a clear indication of contrary legislative intent."[20] In *Wilder*, this Court recognized that the basic *Blockburger* same-elements analysis was inadequate to protect against multiple punishments when dealing with compound crimes. Thus, as Justice Cavanagh has thoroughly and persuasively explained, *Wilder* adopted what is essentially a modified version of the same-elements test applicable to compound crimes. Justice Cavanagh's analysis makes clear that this approach is fundamentally consistent with federal authority.[21]

---

[18] *Blockburger*, *supra* at 304.

[19] *Ante* at 11-12 (Cavanagh, J., dissenting).

[20] *Albernaz v United States*, 450 US 333, 340; 101 S Ct 1137; 67 L Ed 2d 275 (1981).

[21] See *Whalen v United States*, 445 US 684; 100 S Ct 1432; 63 L Ed 2d 715 (1980). In *Whalen*, the United States Supreme Court addressed whether convictions for both rape and the killing of the victim in the perpetration of the rape violated the defendant's double jeopardy rights. *Id*. at 685-686. The Court indicated that it was applying the *Blockburger* test. *Id*. at 693-694. However, *Whalen* did not focus on the abstract elements of the rape and felony-murder statutes. *Id*. Rather, the Court considered the elements necessary to prove felony murder and compared them with those necessary to prove the predicate offense. *Id*. at 694.

As I explain later, the federal double jeopardy analysis does not control how Michigan interprets its own constitutional prohibition against double jeopardy. Nevertheless, *Whalen* is important because it highlights the fact that the

(. . . continued)

5

This Court addressed the multiple-punishment strand of Michigan's Double Jeopardy Clause in 1984 when it decided *Robideau*.[22]  It explicitly rejected use of the *Blockburger* test[23] and reasoned that, although *Blockburger's* "creation of a presumption may make a court's task easier, it may also induce a court to avoid difficult questions of legislative intent in favor of the wooden application of a simplistic test."[24]  Instead, this Court used the traditional means of determining legislative intent: the subject, language, and history of the statutes.[25]

---

(continued . . .)
basic *Blockburger* same-elements analysis is inadequate as pertains to compound offenses.  If it is to be used, it should be applied as it was in *Whalen*.  The elements necessary to prove felony murder must be compared with the elements necessary to prove the predicate offense.  The Court must then consider any other indicators of legislative intent.  By failing to adopt this approach, the majority misapplies *Blockburger* in the context of a compound offense.

The majority claims to be "perplexed" by my assertion that *Wilder* is consistent with federal authority.  *Ante* at 7 n 4.  Yet *Wilder* clearly states that its decision is "fundamentally consistent with existing authority of the United States Supreme Court."  *Wilder*, *supra* at 348-349.

[22] *Robideau*, *supra* at 458.

[23] *Id*. at 485-486.

[24] *Id*. at 486.

[25] *Id*.

In 2007, a majority of the Court used *Smith* to overrule *Robideau*.[26]  I dissented from that decision.[27]  I continue to believe that *Robideau* was correctly decided for the reasons expressed in my dissenting opinion in *Smith*:

> In *Robideau*, this Court exhaustively reviewed federal caselaw concerning double jeopardy. *Robideau*, 419 Mich at 472-480.  After concluding that federal jurisprudence offered no concrete guidance, this Court exhaustively reviewed Michigan caselaw concerning Michigan's Double Jeopardy Clause.  *Id*. at 480-484. Similarly, this Court found that Michigan's double jeopardy analysis had not been consistent. *Id.* at 484.
>
> This Court noted that it had concluded in *White*[28] that the transactional approach was the correct standard to use with regard to successive prosecutions.  *Id.* at 485.  However, because different interests were involved, a different standard was needed for cases involving multiple punishments. *Id.*  Accordingly, after conducting an extensive caselaw analysis, this Court explicitly rejected the *Blockburger* test, preferring instead traditional means of determining the intent of the Legislature: the subject, language, and history of the statutes. *Id.* at 486.
>
> *Robideau* was based on the Michigan Constitution and Michigan caselaw.  The test in *Robideau* adequately safeguards a Michigan citizen's right to be free from multiple punishments for the same offense.  As noted in *Robideau*, when multiple punishments are involved, the Double Jeopardy Clause is a restraint on the prosecution and the courts, not on the Legislature. *Id.* at 469. The test in *Robideau* ensures that the defendant does not receive more punishment than intended by the Legislature.  Accordingly, it adequately protects the double jeopardy rights of Michigan citizens.

---

[26] *Smith*, *supra* at 315.

[27] *Id*. at 331-347 (Kelly, J., dissenting).

[28] *People v White*, 390 Mich 245; 212 NW2d 222 (1973), overruled by *Nutt*, *supra* at 591.

7

Moreover, the *Robideau* Court was free to use its own preferred methods of ascertaining judicial [sic: legislative] intent. As noted repeatedly throughout *Robideau*, the *Blockburger* test is simply a method for determining legislative intent. *Robideau*, 419 Mich at 473, 478, citing *Gore v United States*, 357 US 386; 78 S Ct 1280; 2 L Ed 2d 1405 (1958) (stressing that *Blockburger* was decided as a matter of legislative intent), and *Albernaz,* 450 US at 338 (noting that the *Blockburger* test was merely a means to determine legislative intent and that the presumption created by the *Blockburger* test could be rebutted by a clear indication of legislative intent to the contrary).

I believe this is the proper lens through which to view *Blockburger*: It is simply one of many methods by which a court can discern the Legislature's intent. It is not a definitive test that should, or could, be used in every case. Indeed, as noted by this Court in *Robideau*, "it would be quite contrary to established principles of federalism for the United States Supreme Court to impose on the states the method by which they must interpret the actions of their own legislatures." *Robideau*, 419 Mich at 486. Accordingly, the *Robideau* Court was within its authority to reject the *Blockburger* test and instead fashion a test that properly reflected the protections of the Michigan Constitution.

The majority believes that the constitution's ratifiers intended our double jeopardy provision to be construed consistently with the interpretation given the Fifth Amendment by federal courts at the time of ratification. I disagree. As I noted in my dissent in *Davis*, the sole concern in revisiting the Double Jeopardy Clause in our state constitution was to clarify that jeopardy attaches when a jury is sworn, as our courts had interpreted. *Davis,* 472 Mich at 181 (KELLY, J., dissenting).

In *Davis*, I also rejected the majority's claim that the people of Michigan intended to adopt the federal interpretation of the Double Jeopardy Clause. *Id.* Specifically, I did not agree with the majority that the ratifiers knew how the United States Supreme Court had interpreted the federal Double Jeopardy Clause and that they accepted it. *Id.* I did not agree that the ratifiers were willing to allow the federal government to interpret our constitution for us. *Id.* I continue to believe that my analysis in *Davis* was correct. Therefore, I continue to reject the majority's presumption that the

8

voters of our state intended that Michigan's Double Jeopardy Clause be interpreted exactly as the federal provision is interpreted.

The majority overturns *Robideau* also in the belief that the Michigan Constitution does not afford greater protections than does the Fifth Amendment of the United States Constitution. As an initial matter, I would note that the *Robideau* Court did not expressly base its decision on this assertion. Regardless, this Court has, for decades, determined that our constitutional prohibition against double jeopardy affords greater protection than does the Fifth Amendment. See, e.g., *Robideau*, 419 Mich at 507 n 5 (CAVANAGH, J., dissenting), citing *People v Wakeford*, 418 Mich 95, 105 n 9; 341 NW2d 68 (1983), *People v Carter*, 415 Mich 558, 582-584; 330 NW2d 314 (1982), *Wilder*, 411 Mich at 343-349, *People v Jankowski*, 408 Mich 79, 91-92, 96; 289 NW2d 674 (1980), and *White*. Accordingly, for the reasons I have stated, I continue to believe *Robideau* was correctly decided.[29]

THE RESULT REACHED IN *WILDER* IS NOT AT ODDS WITH *ROBIDEAU*

*Robideau* noted that *Wilder*'s analysis did not expressly turn on legislative intent.[30] The majority stretches this criticism to argue that *Robideau* impliedly overruled *Wilder*. I disagree. In fact, *Robideau* emphasized that application of its principles to earlier double jeopardy decisions of this Court was unlikely to yield different results.[31] *Robideau* only disavowed prior multiple-punishment cases to the extent that those decisions suggested that the prohibition against double

---

[29] *Smith*, *supra* at 341-344 (Kelly, J., dissenting).

[30] *Robideau*, *supra* at 482.

[31] *Id*. at 488 n 7.

9

jeopardy operates as a substantive limitation on the Legislature.[32]  The result

reached in *Wilder* is consistent with the analysis dictated by *Robideau*.  Using the

traditional means of discerning legislative intent, I conclude that the Legislature

did not intend to impose multiple punishments for first-degree felony murder and

the predicate felony.

The starting point for determining legislative intent is the text of the

statute.[33]  Here, the felony-murder statute contains no language indicating an intent

to permit multiple punishments.[34]

"A further source of legislative intent can be found in the amount of

punishment expressly authorized by the Legislature."[35]  In *Robideau*, this Court

noted that first-degree criminal sexual conduct and the predicate crimes of robbery

and kidnapping carry the same penalties.  This demonstrates, the Court reasoned,

that the Legislature intended the crimes to be punished separately.[36]  *Robideau*

explained that this analysis is consistent with the result reached in *Wilder*:

> Since felony murder is punishable by a mandatory life
> sentence, while the predicate felonies are punishable by no more

---

[32] *Id*. at 485.

[33] *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004).

[34] See MCL 750.316.

[35] *Robideau*, *supra* at 487.

[36] *Id*. at 488-489.

than a term of years up to life, it may be inferred that the Legislature intended to punish a defendant only once for committing both crimes. While someone in the process of committing a predicate felony has a real disincentive to commit murder (mandatory life) even absent the threat of dual convictions, the same person, assuming the predicate felony carries an up-to-life maximum penalty, would have no such disincentive to commit criminal sexual conduct *unless* dual convictions are imposed.[37]

Thus, the sanctions authorized by the Legislature for felony murder and the predicate felonies support a conclusion that the Legislature intended to punish a defendant only once.

It is true that prohibiting felony murder and prohibiting the predicate felonies generally protect different social norms. This raises an inference of a legislative intent to permit multiple punishments.[38] However, this inference is not conclusive evidence of legislative intent in light of the contrary inferences raised by the statutory language and authorized punishments.

As Justice Ryan stated in his concurring opinion in *Wilder*, the Double Jeopardy Clause works "as a particularized version of the rule of lenity."[39] This accords with *Robideau*'s holding that if "no conclusive evidence of legislative intent can be discerned, the rule of lenity requires the conclusion that separate

---

[37] *Id*. at 489 n 8 (emphasis in original).

[38] *Id*. at 487.

[39] *Wilder*, *supra* at 364 (Ryan, J. concurring).

11

punishments were not intended."[40]   No conclusive evidence can be discerned of the Legislature's intent to permit convictions for both felony murder and the predicate felony.   Hence, the rule of lenity requires the conclusion that separate convictions were not intended.

The prosecution has suggested that the rule of lenity must be abandoned in light of the Legislature's adoption of MCL 750.2, which states:

> The rule that a penal statute is to be strictly construed shall not apply to this act or any of the provisions thereof.  All provisions of this act shall be construed according to the fair import of their terms, to promote justice and to effect the objects of the law.

It is not clear that the Legislature can dictate a rule of statutory construction to this Court.  However, that issue need not be resolved here.  This statutory rule aims to ensure that courts construe the criminal code in accordance with the Legislature's intent.  If the felony-murder statute is construed according to the fair import of its terms, we must conclude that it does not permit multiple punishments.  It contains no language evidencing a legislative intent to permit multiple punishments.

Moreover, construing the felony-murder statute to prohibit multiple punishments promotes justice by ensuring that offenders are not subjected to multiple punishments for the same offense.  This construction also conforms to the law's objective of ensuring that those who commit felony murder are severely

---

[40] *Robideau*, *supra* at 488.

12

punished.  The trial judge must sentence a defendant to a mandatory term of imprisonment for life when a defendant is convicted of felony murder.  This is the most severe punishment permitted under Michigan law.  The result reached in *Wilder* is consistent with the analysis set forth in *Robideau* and with MCL 750.2. The Legislature did not intend to impose multiple punishments for first-degree felony murder and the predicate felony.[41]

CONCLUSION

I dissented from the majority's decision to overrule *Robideau* because *Robideau* provided the appropriate protection against multiple punishments in Michigan.  Today, I dissent from the majority's decision to overrule *Wilder*'s

---

[41] The majority proclaims that it cannot understand how the result reached in *Wilder* is consistent with *Robideau*.  The consistency in the two hinges on the distinction between first-degree criminal sexual conduct and first-degree felony murder.  *Robideau* examined the former, whereas *Wilder* examined the latter. Applying the double jeopardy analysis set forth in *Robideau* to these different statutes yields different results.  *Robideau* held that multiple punishments are permissible for first-degree criminal sexual conduct and the predicate felony.  This holding was largely premised on the fact that first-degree criminal sexual conduct and its predicate crimes carry the same penalties.  *Robideau*, *supra* at 488-490.  As *Robideau* explained, felony murder is distinguishable because it is punishable by a mandatory life sentence, whereas its predicate felonies are punishable by lesser sanctions.  *Id*. at 489 n 8.  This leads to different inferences regarding legislative intent.  As any reader of *Robideau* can see, it is the majority that fails to acknowledge what that decision actually says.

Also contrary to the majority's assertion, I do not suggest that the only way to discern whether the Legislature intended to permit multiple punishments is to find explicit language in the statute.  Legislative intent must be discerned from the subject and history of the statute as well as from its language.

13

holding that convictions for both felony murder and the predicate felony violate the Double Jeopardy Clause of the Michigan Constitution. The result reached in *Wilder* is consistent with the result reached under the analysis set forth in *Robideau*.[42] No conclusive evidence can be discerned that the Legislature intended to permit convictions of both felony murder and the predicate felony. The rule of lenity requires the conclusion that separate convictions were not intended. I would affirm the judgment of the Court of Appeals.

Marilyn Kelly

---

[42] I do not read *Wilder* as suggesting that the prohibition against double jeopardy operates as a substantive limitation on the Legislature. Whether a particular punishment is an impermissible "multiple" punishment can only be determined by ascertaining legislative intent. Therefore, the Legislature may amend the felony-murder statute to permit multiple punishments for felony murder and the predicate felonies.